**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

FRIEDRICH PETER ARTEZ,

      Defendant - Appellee.

No. 03-4166

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:01-CR-180-S)**

Michael S. Lee, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the briefs), Salt Lake City, Utah, for Plaintiff-Appellant.

Jeanne T. Lund, Draper, Utah, for Defendant-Appellee.

Before **EBEL**, **ANDERSON**, and **SEYMOUR**, Circuit Judges.

**EBEL**, Circuit Judge.

Friedrich Peter Artez ("Defendant") was indicted for possession of an unregistered short barrel shotgun, in violation of 26 U.S.C. §§ 5861(d) and 5871. Defendant moved to suppress the shotgun as the fruit of an unlawful search of his home. The district court granted Defendant's motion to suppress, concluding that

the search warrant was invalid because not supported by probable cause and that

the good faith exception of United States v. Leon, 468 U.S. 897 (1984), did not

apply. The government appealed. We exercise jurisdiction pursuant to 28 U.S.C.

§ 1291, and we REVERSE the judgment of the district court and REMAND for

further proceedings.

## BACKGROUND

In December 2000, Deputy Sheriff Scott Van Wagoner of the Salt Lake

County Sheriff's Office was contacted by a confidential informant ("CI") who

claimed to have information regarding an alleged methamphetamine dealer named

Fred Artez ("Defendant"). The CI drove with Van Wagoner and identified a

home located at 1127 East 9430 South in Sandy City, Utah as the home of

Defendant. The CI explained to Van Wagoner that he could not purchase

methamphetamine directly from Defendant but that he could purchase it from

Defendant through an unwitting informant ("UI").

Van Wagoner verified that Defendant owned the home located at 1127 East

9430 South in Sandy City, Utah and that Defendant owned two of the vehicles

parked in front of the home. Van Wagoner also contacted the Sandy City

Neighborhood Narcotics Unit and learned that they had received a call within the

last two months from an unidentified male claiming that his wife was purchasing

methamphetamine from the residence at 1127 East 9430 South. Van Wagoner

also discovered through the Sandy City records that several other people, all of whom had narcotics-related criminal histories, lived at or frequented the residence. One of these individuals had an active arrest warrant for possession of drug paraphernalia. Van Wagoner also discovered that Artez had been arrested twice, once for larceny and once for driving under the influence of alcohol.

With the CI's assistance, Van Wagoner executed two controlled purchases of methamphetamine. The two purchases were conducted within approximately two weeks of each other and were accomplished in essentially the same manner. Van Wagoner (either himself or with the assistance of another agent) searched the CI and his or her vehicle for money and contraband. Finding none, Van Wagoner gave the CI county funds, accompanied the CI to the residence of the UI, and watched as the CI knocked on the front door and made contact with the UI. Van Wagoner watched the UI exit the residence and get into the CI's car, and he followed the UI to 1127 East 9430 South.[1] Van Wagoner watched the UI exit the vehicle, initiate contact with an occupant of the residence, and enter the residence. After approximately twenty minutes, Van Wagoner watched the UI exit the suspect residence and get into the vehicle, followed the UI back to his or her home, and watched the UI enter his or her home. Van Wagoner then watched

---

[1]The CI apparently waited at the UI's home while Van Wagoner followed the UI to the suspect residence.

the CI exit the UI's home. Van Wagoner followed the CI to a prearranged location, where the CI handed Van Wagoner a quantity of suspected methamphetamine and said that he or she had "purchased it from [Defendant] through the unwitting." Van Wagoner again searched the CI for money and contraband and found nothing. Van Wagoner later field tested the substance to verify that it was, in fact, methamphetamine.

Following the two controlled purchases, Van Wagoner conducted several brief surveillances of the suspect residence, each of which lasted for approximately thirty minutes. He noticed during these surveillances that several people arrived and stayed for a short period of time. During his surveillance, he stayed a distance away from the residence because the CI had informed him that Defendant kept surveillance cameras outside his residence. Based on his training and experience, Van Wagoner found the activity he observed indicative of narcotics distribution.

Van Wagoner prepared an affidavit for a search warrant which relayed all of this information. Van Wagoner also indicated in the affidavit that the CI was an admitted narcotics user and that the CI had given Van Wagoner some details about the pricing, packaging, and effects of methamphetamine, which convinced Van Wagoner that the CI was knowledgeable about such things. Van Wagoner stated in the affidavit that he considered the CI to be reliable because the CI had

never been in custody and came forward out of his or her concern for the safety of the community.

A warrant for the search of Defendant's home was issued based on Van Wagoner's affidavit.[2]  Officers conducted a search of Defendant's home pursuant to that warrant.  They discovered and seized drug paraphernalia and quantities of marijuana and methamphetamine.  They also discovered and seized a short barrel shotgun and a variety of other firearms.  Based on this evidence, Defendant was charged with possession of a short barrel shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871.  Defendant moved to suppress the evidence.  The district court granted that motion, holding that the warrant was not supported by probable cause and that the Leon good faith exception did not apply.  The government timely filed this appeal.

## DISCUSSION

### A.  Probable Cause

#### 1.  Standards of Review

A magistrate judge's task in determining whether probable cause exists to support a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him,

---

[2]The warrant also authorized a search of Defendant's person, but only the search of the home is at issue in this appeal.

including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision." Id. at 235.

A magistrate judge's decision to issue a warrant is entitled to "great deference." Id. at 236; United States v. Tuter, 240 F.3d 1292, 1295 (10th Cir. 2001). Accordingly, we need only ask whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a "substantial basis" for determining that probable cause existed. Gates, 462 U.S. at 238-39; Tuter, 240 F.3d at 1295.

We review *de novo* the district court's determination of probable cause and review its findings of historical fact for clear error. Tuter, 240 F.3d at 1295.

### 2. *Analysis*

In Illinois v. Gates, the Supreme Court adopted a "totality of the circumstances" test to determine when information from an anonymous or confidential informant can establish probable cause. 462 U.S. at 238; accord Tuter, 240 F.3d at 1295. The Court explained that an informant's "veracity,

reliability, and basis of knowledge are all highly relevant in determining the value of his report." Gates, 462 U.S. at 230 (internal quotations omitted). However, "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233. Specifically, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000).

We conclude in this case that the information contained in the search warrant affidavit sufficiently corroborated the confidential informant's tip. We address each of the corroborating items of evidence in turn.

*a. The Controlled Purchases*

A tip from an anonymous or confidential informant that narcotics are being distributed at a particular location may be corroborated through the arrangement of a controlled purchase at the suspect location. The common formalities observed by police officers when conducting such controlled purchases are as follows: the police search the informant (and his vehicle, if appropriate) for money and contraband prior to the buy; give the informant money with which to

purchase the narcotics;[3] transport the informant to the suspect residence (or follow the informant to the residence); watch the informant enter the suspect residence, disappear while inside the suspect residence, and emerge from the suspect residence; search the informant upon exiting the suspect residence; and receive the narcotics from the informant.  See, e.g., Avery, 295 F.3d at 1165; Cook, 949 F.2d at 292; United States v. Wood, 695 F.2d 459, 463 (10th Cir. 1982); United States v. Pinson, 321 F.3d 558, 560-61 (6th Cir. 2003), cert. denied, 124 S. Ct. 292 (2003); United States v. Pennington, 287 F.3d 739, 742 (8th Cir. 2002); United States v. Genao, 281 F.3d 305, 307 (1st Cir. 2002); United States v. McKinney, 143 F.3d 325, 327 (7th Cir. 1998); United States v. Gibson, 123 F.3d 1121, 1123 (8th Cir. 1997); United States v. Beck, 122 F.3d 676, 678 (8th Cir. 1997); United States v. Khounsavanh, 113 F.3d 279, 282 (1st Cir. 1997); United States v. Smith, 9 F.3d 1007, 1009 (2d Cir. 1993); United States v. Harper, 802 F.2d 115, 120 (5th Cir. 1986); United States v. Rodgers, 732 F.2d 625, 627, 630-31 (8th Cir. 1984).

As these cases make clear, the absence of constant visual contact with the informant conducting the transaction does not render a controlled purchase insufficient, nor does the absence of an audio-recording of the transaction.

---

[3]Some courts note that the money is marked, see, e.g., United States v. Avery, 295 F.3d 1158, 1165 (10th Cir. 2002), and some do not, see, e.g., United States v. Cook, 949 F.2d 289, 292 (10th Cir. 1991).

In this case, the controlled purchases orchestrated by Van Wagoner deviated from these common formalities only in the use of an unwitting informant as an intermediary between the confidential informant and the suspect residence. The use of an unwitting informant introduces an additional layer of uncertainty to the transaction because it leaves open the possibility that the narcotics were acquired not at the suspect residence but at the location where the confidential and unwitting informants met before and after the transaction.

Nonetheless, we have approved the use of an unwitting informant in a controlled purchase situation almost indistinguishable from the one at issue in this case. In United States v. Richardson, an officer arranged a controlled purchase using an unwitting informant as an intermediary between a known informant and the suspect residence. 86 F.3d 1537, 1542-43 (10th Cir. 1996), *abrogation on other grounds recognized by* United States v. Pearce, 146 F.3d 771, 774 (1998). The known and unwitting informants arranged a transaction and designated a meeting place. Richardson, 86 F.3d at 1542. The officer drove the known informant to the meeting place and gave him money to purchase cocaine. Id. at 1542-43. The known informant then got into the unwitting's truck. Id. at 1543. Upon exiting the truck, the known informant informed the officer that he had given the unwitting the money and that the unwitting was going to purchase cocaine from the suspect residence. Id. at 1545. Meanwhile, surveillance officers

watched the unwitting enter the driveway of the suspect residence, exit the vehicle, disappear for twenty minutes, and return to his vehicle. Id. The unwitting returned to the location where the known informant waited and gave the cocaine to the known informant. Id. at 1543. We held that "the informant's tip was corroborated by a controlled narcotics purchase and the observation of Mr. Richardson's residence." Id. at 1545.

Other courts have also approved the use of unwitting informants in controlled purchases of narcotics. See, e.g., United States v. Jordan, 999 F.2d 11, 12-14 (1st Cir. 1993) (approving use of confidential informant and two intervening unwitting informants in controlled purchase, even though affidavit did not "exclude the possibility that [an informant] might have obtained the marijuana at some place along the drug 'buy' route other than [the suspect] residence"); United States v. Blackwood, 913 F.2d 139, 141 (4th Cir. 1990) (approving use of confidential informant and intervening unwitting informant).

The two controlled purchases conducted in this case were conducted in a similar manner to the controlled purchases in Richardson, 86 F.3d at 1542-43, 1545, and the other cases that have approved the use of intervening unwitting informants. Each controlled purchase utilized at least one unwitting informant as a middleman between the confidential informant and the suspect location, and each involved a meeting between the confidential informant and the unwitting

informant prior to the transaction.[4]  Consistent with this authority, we conclude that the two controlled purchases conducted in this case corroborated the confidential informant's tip that he or she, through an unwitting informant, was able to purchase methamphetamine from Defendant's residence.

Defendant makes much of the fact that the controlled purchases that occurred in this case were not conducted pursuant to Mauriello's Criminal Investigation Handbook.  For example, Defendant claims that the informants were not in constant contact with Van Wagoner during the transactions, that Van Wagoner failed to videotape or audiotape the transactions, and that the money Van Wagoner gave the confidential informant was not marked.  We have come across no authority for the proposition that controlled purchases not conducted precisely pursuant to that Handbook are therefore denied of corroborative value.  To the contrary, the authority supports our conclusion that controlled purchases conducted as Van Wagoner conducted these controlled purchases corroborate a

_____

[4]The only distinction between Richardson and this case is that in Richardson, the meeting between the informants occurred in the unwitting informant's truck, see 86 F.3d at 1545, and in this case the meeting between the informants occurred in the unwitting informant's house.  We do not find this distinction relevant.  There is no indication in Richardson that, because the meeting occurred in a vehicle instead of a house, the officers were able to observe the meeting.  See 86 F.3d at 1545.  Accordingly, just as in this case, the manner in which the controlled purchase was conducted in Richardson left open the possibility that the narcotics transaction occurred during the meeting between the informants, not at the suspect residence.  Nonetheless, we held in Richardson that the controlled purchase sufficiently corroborated the informant's tip.  Id.

confidential informant's tip that a particular location is being used to distribute narcotics.

Defendant also objects that the two controlled purchases did not corroborate the informant's tip because they did not implicate Defendant personally but at most implicated one of the several other individuals residing at Defendant's home. Defendant misunderstands the analysis governing the issuance of a warrant for the search of a place. "The test is whether the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the *place to be searched*." United States v. Nolan, 199 F.3d 1180, 1183 (10th Cir. 1999) (emphasis added) (internal quotations omitted); see also Gates, 462 U.S. at 238 (probable cause exists if affidavit demonstrates "a fair probability that contraband or evidence of a crime will be found *in a particular place*" (emphasis added)). The two controlled purchases that occurred in this case supported Van Wagoner's suspicion that methamphetamine would be found at Defendant's residence. Whether Van Wagoner did or did not have reason to connect Defendant personally to the transactions is irrelevant to our probable cause analysis.

In sum, we conclude that the two controlled purchases of methamphetamine from Defendant's residence helped corroborate the confidential informant's tip that the residence was utilized to distribute methamphetamine.

### b. Tip from a Second Informant

A tip from a second informant can also help corroborate information from a confidential informant. United States v. Sturmoski, 971 F.2d 452, 455-56, 457-58 (10th Cir. 1992). When Van Wagoner contacted the Sandy City Neighborhood Narcotics Unit after he received the confidential informant's tip, he learned that an anonymous informant had reported within the previous two months that his wife was buying methamphetamine from Defendant's home. Although we do not know for certain that the anonymous tip came from an independent source, we conclude that the anonymous tip did provide some additional corroboration of the confidential informant's tip.

### c. Police Surveillance

Police surveillance which "show[s] an unusually high volume of visitors briefly entering and leaving [a] residence, consistent with drug trafficking[,]" can also corroborate information from a confidential informant that the residence is being used to distribute narcotics. United States v. Corral, 970 F.2d 719, 727 (10th Cir. 1992). Van Wagoner conducted several brief surveillances of Defendant's residence, during which he observed several visitors staying for short periods of time. Officer Van Wagoner was highly experienced in the matter of drug trafficking, and he deemed this activity indicative of narcotics distribution.

This information provided additional corroboration of the confidential informant's tip.

Defendant objects that Van Wagoner's surveillances were not conducted in accordance with Mauriello's Criminal Investigation Handbook. For example, he argues that Van Wagoner should have recorded the times of the visitors' arrivals and departures and, if possible, their names and descriptions. We agree that more detailed information with respect to the number, identity, and description of persons entering and exiting Defendant's residence would have been helpful. Nonetheless, we believe that Van Wagoner's observation that a series of visitors entered the residence and stayed for only a short period of time did provide some additional corroboration of the confidential informant's tip when interpreted in light of Officer Van Wagoner's extensive experience.

### d. Narcotics Histories of Other Residents

Criminal history alone is not enough to support a finding even of reasonable suspicion, much less probable cause. United States v. Sandoval, 29 F.3d 537, 542 (10th Cir. 1994). "If the law were otherwise, any person with any sort of criminal record . . . could be subjected to a Terry-type investigative stop by a law enforcement officer at any time without the need for any other justification at all." Id. at 543. However, criminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause. See

United States v. West, 219 F.3d 1171, 1179 (10th Cir. 2000); United States v. Myers, 106 F.3d 936, 939 (10th Cir. 1997); United States v. McCranie, 703 F.2d 1213, 1218 (10th Cir. 1983).

In this case, Van Wagoner reported in the search warrant affidavit that four other individuals who either lived at or frequented the suspect residence had prior convictions for narcotics-related offenses, including possession and possession with intent to distribute. He also reported that one of the residents had an active arrest warrant for possession of drug paraphernalia. This information further corroborated the confidential informant's tip that Defendant's residence was being used to distribute methamphetamine and that drugs or related contraband was likely to be found at that location.

5. *Summary*

In sum, Van Wagoner reported five pieces of information in his search warrant affidavit: (1) a tip from a confidential informant that methamphetamine was being distributed at Defendant's residence; (2) the successful execution of two controlled buys of methamphetamine from the suspect residence; (3) a tip from an anonymous informant to a different police unit that methamphetamine was being distributed at Defendant's residence; (4) the results of surveillance of the suspect residence indicating a series of visitors staying for short periods of time, consistent with drug trafficking activity; and (5) the narcotics-related

criminal histories of four inhabitants or frequent visitors of the suspect residence, including an active arrest warrant against one of these individuals for possession of drug paraphernalia.

Certainly this information did not eliminate the risk that the confidential informant was lying or was in error. That risk, however, need not be wholly eliminated. Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 3.3(f), at 168 (3d ed. 1996). "Rather, what is needed is that the probability of a lying or inaccurate informer has been sufficiently reduced by corroborative facts and observations." Id. (internal quotations omitted). Viewing the totality of the circumstances, we conclude that the information contained in the affidavit sufficiently reduced that probability. Accordingly, the affidavit was sufficient to give the magistrate a "substantial basis" for determining the existence of probable cause to search Defendant's residence. See Tuter, 240 F.3d at 1295.[5][6]

_____

[5]Defendant also argued before the district court that the warrant was unconstitutionally vague because, in addition to naming specific items to be seized, the warrant also authorized seizure of the "fruits and/or instrumentalities of the crimes of manufacturing a controlled substance and or distribution of a controlled substance, and or possession of a controlled substance." Although it is not clear that Defendant continues that argument here because he discusses it in only one sentence buried in his other argument, we conclude that this argument is without merit. See Anderson v. Maryland, 427 U.S. 463, 479-82 (1976) (approving warrant authorizing seizure of "other fruits, instrumentalities and evidence of crime at this (time) unknown," when phrase, read in context, was

(continued...)

- 16 -

## C. *Franks v. Delaware* [7]

Under <u>Franks v. Delaware</u>, a defendant may request an evidentiary hearing regarding the veracity of a search warrant affidavit. 438 U.S. 154, 171-72 (1978). Before the defendant will be entitled to such a hearing, however, the defendant must allege deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. <u>Id.</u> at 171. Affidavits of witnesses should be provided to the court or their absence satisfactorily explained. <u>Id.</u> Allegations of negligence or innocent mistake are insufficient. <u>Id.</u> If these requirements are met, then the defendant must show that the remaining content of the warrant affidavit is insufficient to support a finding of probable

---

[5](...continued)
limited to fruits and instrumentalities of particular crime).

[6]<u>United States v. Tuter</u> and <u>United States v. Danhauer</u>, relied upon by the district court below to support his order of suppression, are clearly distinguishable. <u>Tuter</u> involved a search of defendant's garage for bomb-making materials. 240 F.3d at 1293-94. But the warrant there was based solely upon an anonymous caller and the only corroboration was a fifteen-year old criminal history of the defendant. <u>Id.</u> at 1294. In <u>Danhauer</u>, a confidential informant stated that the defendant was cooking methamphetamine in his garage. 229 F.3d at 1004. The only corroboration was defendant's criminal history, and a positive urine analysis test previously conducted on defendant's wife. <u>Id.</u> Neither case involved controlled buys, direct stake-outs revealing suspicious activity, extensive drug records of multiple occupants of the house, and probable multiple tipsters of criminal activity, all of which was present in the case before us.

[7]Defendant raises a <u>Franks</u> argument only in conjunction with his discussion of <u>United States v. Leon</u>. Given our previous discussion, we do not address the <u>Leon</u> issue. We briefly discuss the <u>Franks</u> issue, however, because it does potentially impact our <u>Illinois v. Gates</u> analysis.

- 17 -

cause. Id. at 171-72. "The standards of deliberate falsehood and reckless disregard set forth in Franks apply to material omissions, as well as affirmative falsehoods." Avery, 295 F.3d at 1166.

In this case, Defendant accuses Van Wagoner of intentionally or recklessly mischaracterizing material facts in the search warrant affidavit and omitting material facts from that affidavit. His allegations are insufficient to warrant a Franks hearing. First, Defendant argues that Van Wagoner misrepresented that the unwitting informant had personally interacted with Defendant. Van Wagoner reported in the affidavit that "[t]he C.I. handed me a quantity of suspected methamphetamine and said that he/she purchased it from [Defendant] through the unwitting." Defendant presented no evidence that this statement mischaracterized the information the CI reported to Van Wagoner after the controlled purchase. Moreover, it is immaterial whether the unwitting interacted with Defendant or some other individual at the residence. See discussion supra Section A.2.a.

Second, Defendant suggests that Van Wagoner misrepresented that Defendant maintained surveillance cameras outside his home. Van Wagoner reported in the affidavit that "the C.I. indicates that [Defendant's] home has surveillance cameras." Defendant presented no evidence that this statement mischaracterized the information the CI reported to Van Wagoner.

- 18 -

Third, Defendant accuses Van Wagoner of misrepresenting that the CI's decision to come forward was a genuine act of humanitarian concern. Van Wagoner reported in the affidavit that "the confidential informant came forward on his/her own out of concern for the safety and well being of the community." Defendant argues that the CI had "undoubtedly" been arrested and charged with various narcotics-related crimes. Defendant presented no evidence to support this allegation.

Fourth, Defendant argues that Van Wagoner omitted information that Defendant operated an in-home business that caused the frequent traffic outside his home and that Defendant rented the basement to an individual with a narcotics-related criminal history. Franks, however, applies only to intentional or reckless omissions from the affidavit. See Avery, 295 F.3d at 1166. Defendant does not allege that Van Wagoner either knew this information or recklessly failed to uncover the information.

Fifth, Defendant argues that Van Wagoner omitted details about Defendant's two prior arrests and omitted the fact that Defendant had recently received a concealed weapons permit after an extensive background check. It is true that Van Wagoner stated only that Defendant had been arrested twice before, once for larceny and once for driving under the influence, but did not state that the arrests occurred many years ago and did not result in convictions. It is also

true that Van Wagoner did not mention Defendant's background check in the affidavit. However, Defendant has not demonstrated that these omissions were intentional or reckless, nor has he demonstrated that the affidavit, with this information, would have been insufficient to support a finding of probable cause.

Finally, Defendant argues that Van Wagoner omitted the fact that Defendant had no narcotics-related criminal history and that all other adult residents of Defendant's home did have narcotics-related criminal histories. These allegations are gross mischaracterizations of the record. The affidavit expressly listed all other persons whom Van Wagoner had identified as residents of the home and listed their narcotics-related criminal histories. He particularly noted that "[a]ll four persons have arrest histories for possession of, possession with intent to distribute or possession of narcotics paraphernalia." Van Wagoner separately listed Defendant's criminal history, which involved no mention of narcotics. In any event, it must again be emphasized that the warrant at issue was to search the residence and it was not limited just to a search of this Defendant.

In sum, each of Defendant's numerous allegations are either wholly unsubstantiated by the record, flatly contrary to the record, or insufficient to satisfy the Franks standard.

- 20 -

**CONCLUSION**

We conclude that the warrant authorizing a search of Defendant's home was supported by probable cause. Accordingly, we REVERSE the judgment of the district court granting Defendant's motion to suppress the shotgun and REMAND for further proceedings.