**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ARASH ALEXANDER ZARIF,

    Defendant-Appellant.

No. 05-4268
(D. Utah)
(D.C. No. 2:05-CR-00117-PGC)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE** and **HARTZ**, Circuit Judges, and **KRIEGER**, District Judge[**]

In this appeal, Arash Alexander Zarif challenges the trial court's denial of his request for a *Franks* hearing and its finding that sufficient probable cause existed to support a search warrant executed at Zarif's residence. He contends that he identified several false statements in the warrant affidavit that constituted either deliberate falsehoods or which were made with a reckless disregard for the truth, and that, when stripped of the false statements, the warrant affidavit fails to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Marcia S. Krieger, United States District Judge for the District of Colorado, sitting by designation.

establish sufficient probable cause to permit a search of his residence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Facts

On or about February 17, 2005, Draper City Police Detective K. Cole signed an affidavit for a search warrant, asserting that he believed that, on or about February 6, 2005, Zarif had transported two minor females to his house for the purpose of engaging in prostitution. Cole's affidavit stated that it was based primarily on interviews conducted with the two minors, who were identified as V1 and V2. The following facts are taken from the affidavit. Except as specifically noted herein, Zarif does not dispute the veracity of the statements in the affidavit.

The affidavit stated that both minors had positively identified Zarif from his driver's license photo placed in a photo lineup. Zarif contends that this statement is false, insofar as V2's recorded interview with Cole reveals that she stated that the photo of Zarif "looks kind of like Alex, but I don't think it's him."

The affidavit went on to state that on January 22, 2005, V2, having previously been introduced to Zarif by a friend, went to Zarif's home and had sexual intercourse with him. On February 6, 2005, V2 called V1, and both girls were picked up by Zarif in his car. The affidavit states that V1 identified certain details of Zarif's car. As they were driving, V1 asked Zarif how he made enough money to be able to afford the car. Both V1 and V2 told Cole that Zarif

-2-

responded by saying that he "sold shoes." However, in V2's recorded interview with Cole, she had stated that Zarif had said he was a "middleman" for a shoe company.

The affidavit further states, according to V1, Zarif then stated that he owned a "brothel," or, according to V2, that he ran an "escort service." The minors asked how much money the "girls" made working for him, and were told that they earned between $300 and $500 for sexual intercourse, and $50 for performing oral sex. Zarif inquired as to whether the minors were interested in making some money that night. V2 immediately agreed, but V1 hesitated. Zarif then began calling unknown persons on his cell phone to arrange a liaison at his house. The affidavit states that V2 "believes the phone numbers for the people [Zarif] called were recorded in his cell phone because he looked their number up in the phone." Zarif contends that V2's recorded interview does not indicate that V2 ever voiced such a belief or asserts that she saw Zarif look the numbers up in his phone.

Zarif pulled the car into a garage located on the bottom level of a residence. The affidavit recites V1's identification of the layout of the residence, including the furnishings of the main level, and the location of a bathroom and bedroom on higher floors. Zarif contends here that "Both minors did not describe the residence in great detail." Once inside, Zarif again asked if the minors wanted to make some money by performing oral sex, and both minors agreed. Zarif sent the

minors to the bathroom to "get ready." Three males then arrived, described by both minors as being a "Native American-Indian," a "Mexican," and a "white guy." Zarif brought the "Indian" and the "Mexican" to the bathroom, and told the minors to begin. V1 insisted that the men use a condom, and the men put on condoms. V2 stated that neither man used condoms at any time. V1 began performing oral sex on the "Indian," and V2 performed oral sex on the "Mexican." After five minutes, they switched partners. V1 states that she waited until the "Mexican" procured another condom before she would perform oral sex on him. Both minors state that V2 finished first, and left the bathroom, and that V1 finished about five minutes later. Zarif alleges that the affidavit fails to disclose the fact that V1 gave Cole inconsistent stories regarding the acts she performed, namely, that although she told Cole in the interview that she performed oral sex, in a prior written statement, she had stated that she gave a "hand job."

The affidavit states that according to V1, after she finished and went downstairs, V2 went back to the bathroom with the "white guy" and, V1 believes that V2 performed oral sex on him. The affidavit notes that V2 "stated the exact opposite" – that V1 went upstairs with the "white guy" and performed oral sex on him. The affidavit also states that "V1 admitted to giving her mother $100.00 the next day. V1's mother confirmed that V1 gave her $100.00." Zarif contends that this last statement is misleading, implying that the $100 corroborated the claim

that V1 received the money for performing the acts described. However, V1 stated in her interview that the money she gave her mother came from performing construction work, a fact not disclosed in the affidavit.

The affidavit then states that, according to V2, after they had all finished, they went to the kitchen area and began drinking vodka out of a bottle. The three males left, and Zarif then stated that he wanted to "hot tub." Both minors went upstairs to the bedroom where a tub was apparently located, got undressed,[1] and got into the tub. The minors began "making out," when Zarif came in and began recording them with what Cole believed was a digital movie camera. Zarif contends that the allegation that the minors were "making out" in the tub wrongfully implies that they were engaged in a "lewd and lascivious" act. He states that both minors stated to Cole that they viewed the footage that Zarif had recorded and stated that they looked "silly," that it did not "look real," and that they were "giggling." Zarif contends that omission of the minors' characterizations of what they saw on the recorded footage renders this portion of the affidavit misleading.

V2 states that, after they were done in the tub, both got out, dried off, and got dressed. They asked Zarif if they could watch the footage he had recorded.

---

[1] The affidavit notes a discrepancy in the minors' statements on this point. It states that V1 claims that she kept her sports bra on and took off her pants and put on a pair of green or blue shorts belonging to Zarif, and that V2 was naked. V2 stated that both she and V1 were naked in the tub.

V1 stated that, when the recording began to play, she saw "young girls, maybe only 14 years old, performing sex acts." V2 stated that the girl she saw on the recording was "one of [Zarif's] old girlfriends." Zarif contends that this juxtaposition of the two minors' statements in the affidavit implies that the girl identified by V2 is the same person seen by V1 "performing sex acts." In actuality, Zarif contends, V2 stated that the person she saw on the tape was fully clothed, sitting and talking with Zarif, and that the affidavit is misleading in implying that the two minors are describing the same scene.

The affidavit then repeats that both minors were shown a six-photo array, and that both picked out Zarif's photo. As stated previously, Zarif contends that this statement is false with regard to V2, who stated that the photo "looked like Alex" but that she did not think it was him.

The affidavit then recites certain information conveyed to Cole by Draper City Police Officers. On February 9, 2005, those officers were asked to assist with locating a runaway juvenile – V2 – who was believed to have been at Zarif's residence. The officers arrived and spoke with Zarif, who stated that he knew V2, but stated that he had not seen her in "several days," which he later refined to "several weeks." Zarif permitted the officers to search the residence for V2, but she was not found. On February 11, 2005, Cole spoke with the officers who had conducted the search, and the officers described the layout and contents of the residence in a manner that matched the description of the premises given by V1,

and also reported seeing dark blue or green shorts that matched a description given by V1. Zarif contends that this portion of the affidavit misleadingly omits to mention that Officer Carpenter[2] of the Draper City Police Department searched Zarif's residence on February 10, 2005, specifically looking for a video camera, but did not find one.

Zarif also contends that Cole's failure to state in the affidavit that the minors did not report the events to police until after their parents had learned of the events was both material and intentional or reckless.

Based on the foregoing, Cole sought a search warrant permitting the search of Zarif's residence and the specific authorization to search for and seize Zarif's cell phone; any used condoms; a bottle of vodka; hair, fibers, and fingerprints in the home and Zafir's car; and the camera, among other things. On February 17, 2005, the Magistrate Judge issued the warrant requested by Cole. The record does not reveal when the warrant was executed, or what evidence was seized pursuant to it.

Zarif was subsequently indicted, and on April 7, 2005, a Second Superseding Indictment was returned, charging Zarif with three counts of enticing a minor to engage in sexually explicit conduct for the purpose of producing visual

---

[2] Officer Carpenter is not one of the two Draper City Police Officers mentioned in the affidavit as having searched Zarif's residence on February 9, 2005. Thus, it appears that a second search of the residence occurred on February 10, 2005. No mention of this second search or its circumstances is made in the affidavit.

depictions of such conduct; one count of possession of child pornography; two counts of enticing a minor to engage in prostitution; one count of possession of a firearm by a prohibited person; and one count of possession of methamphetamine.

## II. Motion to suppress / for *Franks* hearing

Zarif moved to suppress[3] the evidence seized pursuant to the warrant on the grounds that the warrant was obtained by means of an affidavit containing material misrepresentations. On April 12, 2005, the trial court denied the motion in a written order, without having conducted a *Franks* hearing. The court found that although certain representations contained in the warrant affidavit were either knowingly or recklessly misleading,[4] the affidavit, stripped of those

---

[3] The motion is not included in the record, and is not immediately apparent from a review of the trial court's docket. The docket does reflect two motions filed on March 25, 2005, one to "suppress guns and drugs not listed in the search warrant" **(# 37)** and one "for Evidentiary Hearing re: Sixth Amendment violation" **(# 38)**. Our description of the motion is taken from the trial court's order denying it.

[4] Specifically, the trial court found that the assertion that V2 positively identified Zarif's photo was false and the court assumed, without necessarily finding, that the falsehood was reckless; that the description of both minors stating that Zarif claimed to sell shoes was neither false nor intentionally or recklessly misleading; that the description of V2 as stating that Zarif looked up numbers in his cell phone was not materially false, and that any untruthfulness by Cole in representing V2's statement on this point would have been negligent, but not intentional or reckless; that the implication that the $100 V1 gave to her mother came from Zarif for performing oral sex was misleading, and was made with reckless disregard; that the representations as to the minors "making out" in the tub was not false; that the implication that the girl seen by V1 in the recording performing sexual acts was the same girl identified by V2 as one of Zarif's girlfriends was misleading, and was intentional or made with reckless disregard; that the omission of Officer Carpenter's failure to find the camera was not

representations, still demonstrated sufficient probable cause for the issuance of the warrant. Specifically, the trial court disregarded the assertion that V2 had positively identified Zarif in the photo lineup, disregarded the assertion that V1 had given her mother $100 the following day, and considered that the minors' characterizations of what they saw on the recording when it was played back to be contradictory. Nevertheless, "even with these falsehoods and omissions redacted," the trial court found that the affidavit had "abundant information for a finding of probable cause." In particular, the trial court noted the undisputed fact that V1 had positively identified Zarif in a photo lineup; the undisputed facts regarding Zarif telling the minors that he operated something akin to an escort service and that he asked them if they wanted to earn money that night by performing oral sex; the fact that V1 described the interior of Zarif's home in a manner that was corroborated by the Draper City Police Officers; the undisputed fact that Zarif introduced the minors to three men, told them to "act professionally," and that the minors performed oral sex on the men; and the undisputed fact that the Zarif filmed the two minors – at least one of whom was naked – "making out" in a hot tub.

---

misleading; that the omission of V1's prior statement that she performed a "hand job," not oral sex, was not misleading; and that the omission of the fact that the minors did not report the events until after their parents had learned of them was not misleading.

The charges against Zarif were tried in a bench trial on May 2, 2005. Zarif was convicted on three counts of enticing a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, 18 U.S.C. § 2251. He was sentenced to fifteen years' incarceration. This appeal followed.

### III. Discussion

On appeal, Zarif contends that the alleged misrepresentations and omissions discussed above were intentional or reckless. Although not expressly stated or argued, it appears that Zarif appeals those findings by the trial court that certain alleged misrepresentations or omissions were either not false or materially misleading, or were not intentional or reckless. Zarif further argues that, when stripped of the offending information, the affidavit does not demonstrate probable cause because it does not supply information demonstrating the veracity of the informants.

In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the Supreme Court held that in limited circumstances, a defendant is entitled to an evidentiary hearing to determine whether a warrant was issued in reliance on a deliberately or recklessly false affidavit. To be entitled to a *Franks* hearing, a defendant must make a substantial showing that the warrant affiant made a false statement or omitted material information from the affidavit, and that the misrepresentation or omission was made knowingly or with reckless disregard for the truth. *Franks*, 438 U.S. at 155-56; *United States v. Artez*, 389 F.3d 1106, 1116 (10th Cir. 2004).

In addition, the defendant must show that the misrepresentation or omission was necessary to the finding of probable cause. *Franks*, 438 U.S. at 156. In other words, if, after the allegedly false material is set aside or the omitted material excluded, there remains sufficient content in the affidavit to support a finding of probable cause, no hearing is required. *Franks*, 438 U.S. at 171-72. Whether an affidavit demonstrates sufficient probable cause to support a warrant is a question of law that we review *de novo*. *U.S. v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

Zarif's first argument on appeal appears to be that the trial court erred in finding that certain alleged misrepresentations or omissions were either not misleading or were not made with intent or reckless disregard. We need not reach the question of whether the trial court's findings as to the truth or falsity of these allegations are correct because we find that, even if all of the assertions challenged by Zarif were stricken from the affidavit (and all of the allegedly improperly omitted material included), there would still be probable cause for the issuance of a warrant. Zarif does not dispute, for example, allegations in the warrant that he encouraged and facilitated the minors' performing oral sex for money, or allegations that he videotaped the minors – at least one of whom was naked – engaging in simulated intimacies. These unchallenged allegations supply sufficient probable cause for the warrant that was issued even in the absence of the challenged allegations. Thus, we find that the trial court was correct in

concluding that Zarif failed to make the preliminary showing necessary to entitle him to a *Franks* hearing.

Zarif's second argument is that, once the three statements found by the trial court to be intentionally or recklessly misleading are omitted, the affidavit fails to demonstrate sufficient probable cause for issuance of a warrant because the affidavit fails to articulate facts demonstrating the veracity of V1 and V2. Whether a warrant application founded upon an informant's allegations of criminal conduct demonstrates sufficient probable cause is a "practical, common-sense decision," to be made by a magistrate judge in consideration of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Among the factors that must inform this decision are facts in the warrant demonstrating the informant's reliability, veracity, and basis of knowledge. *Id.* The Supreme Court in *Gates* refused to lay down a rigid rule for how much detail a warrant application must provide about the informant, observing that a deficiency in one factor may be balanced out by the excess in another. *Id.* at 233-34. Indeed, even anonymous tips, when supplemented by independent police investigation, may be sufficient despite the absence of any indication of the anonymous informant's veracity, reliability, or basis of knowledge. *Id.* at 237-38.

There is no indication in the record that Zarif raised this specific issue below. Even assuming he had, however, we find that the affidavit contains sufficient allegations from which the magistrate judge could have concluded that

-12-

V1 and V2 were sufficiently reliable witnesses. First, although they occasionally differed in some respects, the two minors' statements corroborated each other, both in general and in many areas of specific detail.[5] Second, V1 and V2 gave detailed descriptions of the alleged wrongdoing, in which they admitted personally participating. *See Gates*, 462 U.S. at 234 ("even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case"). Third, a handful of the facts asserted by V1 and V2 are shown by the affidavit to have been independently corroborated, namely, V1's description of the layout and contents of Zarif's residence and the appearance of his car; Zarif's acknowledgement to the Draper City Police Officers that he knew V2 and had seen her "several days" earlier; and the officers' observation of dark blue or green shorts, matching those described by V1, in Zarif's house. Looking at the totality of the contents of the affidavit, and mindful of the great deference that a reviewing court should pay to the magistrate judge's determination of probable cause, *Gates*, 462 U.S. at 236, we cannot say that the affidavit was so devoid of

---

[5] The fact that the minors' statements sometimes differed on material points does not defeat the corroborative value of their statements. Such inconsistencies are simply one of the circumstances that the magistrate judge would consider in evaluating the sufficiency of the showing of probable cause. Likewise, the possibility that the statements corroborated each other because the minors may have jointly fabricated their stories was another circumstance for the magistrate judge to consider.

facts demonstrating the reliability and veracity of V1 and V2 that the magistrate judge's finding of probable cause lacked any substantial basis.

## IV. Conclusion

The trial court's denial of the motion to suppress is **AFFIRMED**.

Entered for the Court

Marcia S. Krieger
District Judge