**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 14, 2007**

**TENTH CIRCUIT**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 06-4036 |
| Plaintiff-Appellant, | (D. Utah) |
| v. | (D.C. No. 2:05-CR-95 TS) |
| PAUL LIAPIS, |  |
| Defendant-Appellee. |  |

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ALARCÓN**,[**] and **HENRY,** Circuit Judges.

Paul Liapis has appealed from the judgment entered following his
conditional plea of guilty to each count in the superseding indictment. He
reserved the right to appeal the denial of his motion to suppress the evidence and
his motion to dismiss two counts of the superseding indictment.

---

[*]     This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec.
1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

[**]     The Honorable Arthur L. Alarcón, Senior Circuit Judge, United
States Court of Appeals, Ninth Circuit, sitting by designation.

Mr. Liapis contends that his home was searched pursuant to a warrant that lacked probable cause. He also asserts that the District Court erred in denying his motion to dismiss two counts of the superseding indictment that charged him with a violation of 18 U.S.C. § 922(g)(9) because the crime of battery under Utah law does not require the prosecution to prove as an element of the offense that the defendant was a current or former spouse, parent, guardian of the victim or shared a child with the victim. We affirm because we conclude that the search warrant was supported by probable cause and proof of a domestic relationship is only a required element of 18 U.S.C. § 922(g)(9), and not of the underlying state law conviction.

**I**

**A**

On January 11, 2005, Detective Lance Swanson of the West Jordan City Police Department presented an affidavit for a search warrant to Judge Pat Brian of the Utah Third District Court. On the same day, Judge Brian issued the warrant based on the facts set forth in Detective Swanson's affidavit. It authorized the search of Mr. Liapis's residence and the surrounding grounds for methamphetamine, drug paraphernalia, and items relating to the distribution of methamphetamine.

The search warrant was executed on January 13, 2005. Officers seized actual methamphetamine, cocaine and various firearms. Officers also seized

-2-

marijuana and additional firearms belonging to Mr. Liapis during a subsequent search of a storage shed, authorized under a separate search warrant.

**B**

On June 1, 2005, a federal grand jury issued a seven count superseding indictment charging Mr. Liapis with: (1) possession of five grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (2) knowing possession of a mixture or substance containing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (3) knowing possession of a firearm after having being convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9); (4) knowing possession of firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); (5) knowing possession of a mixture or substance containing marijuana in violation of 21 U.S.C. § 841(a)(1); (6) knowing possession of a firearm after having being convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9); and (7) knowing possession of a firearm that had the manufacturer's serial number removed, obliterated, or altered in violation of 18 U.S.C. § 922(k).

**C**

On July 14, 2005, Mr. Liapis moved to suppress the evidence seized from his residence on January 13, 2005. He contended that the search warrant was not supported by probable cause.

Detective Swanson alleged the following facts in his affidavit. He had been a police officer for over seven years. He was assigned to the Detective Division as a narcotics detective. He received specialized training and experience in investigating narcotics offenses.

Detective Swanson was contacted by a confidential informant ("CI") who reported that there was an ongoing drug distribution operation being conducted by Mr. Liapis at his home. The CI informed Detective Swanson that Mr. Liapis had counter-surveillance cameras around his house, and it was guarded by his operatives. The CI also stated that Mr. Liapis was in possession of a large caliber firearm that he kept under a pillow in his bedroom.

Detective Swanson alleged that the CI was reliable because he or she disclosed "complete information about him or herself, including name, date of birth, social security [number], and all [other] pertinent information." Detective Swanson also concluded that the CI was reliable because, during a prior search of Mr. Liapis's home, Mr. Liapis has been found sitting on a loaded firearm.

In order to corroborate the CI's information, Detective Swanson arranged for a controlled buy from Mr. Liapis's home approximately seven days before seeking the search warrant. He used the CI and an unwitting informant ("UI") in the controlled buy. Detective Swanson met with the CI beforehand and checked his or her person and vehicle for any contraband or U.S. currency. He found none. Detective Swanson gave the CI a predetermined amount of U.S. currency

to use in the controlled buy. Officers followed the CI to the residence of the UI. The CI picked up the UI and drove to Mr. Liapis's residence while under the officers' surveillance. The UI exited the CI's vehicle and entered Mr. Liapis's residence. The UI was inside the residence for less than 10 minutes and then returned to the CI's vehicle.

After dropping off the UI, the CI handed a plastic baggie containing a white crystalline substance to Detective Swanson. Detective Swanson again searched the CI and his or her vehicle for any other contraband or currency. He found none. The CI told Detective Swanson that he or she gave the money to the UI and drove the UI to Mr. Liapis's residence. The UI then entered the residence and returned with the contraband. The UI gave the contraband to the CI in exchange for the money. The white crystalline substance tested positive as methamphetamine.

After the controlled buy, Detective Swanson conducted several surveillances of Mr. Liapis's residence. He observed what appeared to be short-term vehicle and pedestrian traffic going into the residence. Detective Swanson alleged that, based on his training and experience in narcotics distribution cases, he knew that persons involved in the sale of narcotics from their residences tend to have this type of traffic. Detective Swanson also received citizen complaints about the short stay traffic and drug activity at Mr. Liapis's address. A criminal background check disclosed that Mr. Liapis had been arrested eleven times for

domestic assault, possession of a firearm, and drug related offenses. Based on the facts alleged in Detective Swanson's affidavit, Judge Ted Stewart of the United States District Court of Utah found that the search warrant was supported by probable cause.

**D**

On November 14, 2005, Mr. Liapis moved to dismiss Counts III and VI of the superseding indictment on the ground that the misdemeanor conviction of battery alleged in the indictment was insufficient to establish a violation of § 922(g)(9) because it was only a violation of a city ordinance and not federal or state law, and it did not require the prosecution to prove that a domestic relationship existed between the defendant and the victim. The District Court denied Mr. Liapis's motion to dismiss Counts III and VI.

On November 16, 2005, Mr. Liapis entered a conditional guilty plea to all seven counts, reserving his right to appeal the District Court's denial of his motion to suppress and his motion to dismiss. Mr. Liapis has timely appealed the final judgment in this matter.

**II**

**A**

On appeal, Mr. Liapis contends that the District Court erred in denying his motion to suppress because "[t]he [a]ffidavit in this case was insufficient to support a finding of probable cause." (Appellant's Opening Br. at 6.) This Court

"review[s] *de novo* the district court's determination of probable cause and review[s] its findings of historical fact for clear error." *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004). "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks omitted). Accordingly, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Id.* at 238-39 (internal quotation marks omitted).

The Supreme Court has instructed that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search." *Id.* at 236.

Recently, this Court has upheld the issuance of a search warrant under a similar set of circumstances. In *Artez*, an officer was contacted by a confidential informant ("CI") who claimed to have information regarding an alleged methamphetamine dealer. *Artez*, 389 F.3d at 1109. The officer drafted an

affidavit and requested a warrant to search Artez's residence after corroborating the CI's information by 1) verifying Artez's residence; 2) determining that Artez had a criminal record; 3) obtaining similar information from an anonymous informant; 4) executing two controlled purchases of methamphetamine utilizing the CI and an unwitting informant as an intermediary; and 5) conducting a brief surveillance of the Artez residence, where he observed several people arriving and staying for short periods of time. *Id.* at 1109-10. This Court concluded that "the affidavit was sufficient to give the magistrate a 'substantial basis' for determining the existence of probable cause to search [Artez's] residence." *Id.* at 1115 (quoting *United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir. 2001)).

Detective Swanson's affidavit substantially parallels the one upheld by this Court in *Artez*. The CI's information to Detective Swanson was corroborated by, *inter alia*, the controlled buy and the surveillance of Mr. Liapis's residence that revealed persons arriving for short periods of time. In addition, Detective Swanson alleged in his affidavit that he received complaints from citizens regarding potential drug activities at Mr. Liapis's residence. Mr. Liapis's criminal history also supports the District Court's conclusion. *See Artez*, 389 F.3d at 1114 ("[C]riminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause").

In determining the existence of probable cause, the Supreme Court has cautioned against viewing individual pieces of evidence "in isolation, rather than

as [] factor[s] in the totality of the circumstances." *Maryland v. Pringle,* 540 U.S. 366, 372 n.2 (2003). This Court has concluded that "courts may not engage in a 'divide-and-conquer' analysis of facts to determine whether probable cause existed." *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004) (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

Mr. Liapis attacks Detective Swanson's affidavit's sufficiency by isolating specific pieces of evidence without considering the totality of the circumstances. For example, he argues that the one controlled purchase executed by Detective Swanson was insufficient as the officer in *Artez* executed two controlled purchases. Appellant's Opening Brief at 25. He also argues that Detective Swanson did not provide a detailed enough description of the surveillance of Mr. Liapis's home, such as describing exactly the number of people living there and the exact vantage point of the Detective. *Id.* at 18-20, 24-25. Mr. Liapis further faults Detective Swanson's allegations on the ground that he failed to provide enough detail in describing his prior search of Mr. Liapis's home. *Id.* at 14-17, 25-26. Whether any of these pieces of evidence would be sufficient in themselves to support probable cause, the District Court did not err in determining that probable cause was established by the totality of the circumstances set forth in Detective Swanson's affidavit.

**B**

Mr. Liapis further contends that the District Court erroneously denied his motion to dismiss Counts III and VI of the superseding indictment because his prior misdemeanor battery conviction under Salt Lake City, Utah, Municipal Ordinance § 11.08.020 is not a predicate "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). He argues that to support a conviction under § 922(g)(9) the underlying misdemeanor crime must have had as an element that a domestic relationship existed between the defendant and the victim.

This contention is foreclosed by this Court's decision in *United States v. Heckenliable*, 446 F.3d 1048 (10th Cir. 2006). This Court held in *Heckenliable* that "a 'misdemeanor crime of domestic violence' requires the domestic relationship element to be charged and proven as an element of a § 922(g)(9) violation, not as an element of the underlying misdemeanor." *Id*. at 1051 n.8.

The District Court did not err in denying Mr. Liapis's motion to dismiss Counts III and VI of the superseding indictment.

AFFIRMED.

Entered for the court


Arthur L. Alarcón
Senior Circuit Judge