**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 10-5085 |
| v. | (N.D. Oklahoma) |
| MIGUEL ANGEL JUAREZ, | (D.C. No. 4:10-CR-00005-JHP-2) |
| Defendant - Appellant. | |

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **TACHA**, and **BRORBY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant Miguel Angel Juarez pled guilty to three counts: conspiracy, in violation of 21 U.S.C. § 846; possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), as well as aiding and

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

abetting, in violation of 18 U.S.C. § 2(a); and possession of methamphetamine with the intent to distribute, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A)(viii). Mr. Juarez was sentenced to 120 months on each count, to be served concurrently. He reserved, however, the right to appeal the previous denial of his motion to suppress evidence obtained following the stop of the van he was driving. On appeal, Mr. Juarez appeals only the denial of his motion to suppress, which we affirm.

## BACKGROUND

On December 15, 2009, a confidential informant known to Tulsa County Deputy Sheriff Lance Ramsey, told Deputy Ramsey that an Hispanic male, whose name was unknown, was engaged in the selling and storing of marijuana and methamphetamine. This informant had previously provided information to Tulsa County authorities which had been accurate and had led to the arrest of three individuals.

The informant told Deputy Ramsey that he/she[1] had been to an apartment at 8304 South 77th East Avenue in Tulsa, where he/she had seen large quantities of methamphetamine and marijuana the night before. The confidential informant stated that the unknown Hispanic male had received a 500-pound shipment of marijuana the previous evening, which was not yet cut but remained in large

---

[1]The identity and gender of the informant has not been disclosed.

quantities. The informant also stated that the marijuana would be transported in a white van to a location where the marijuana would be cut. The informant further noted that, in addition to the white van, the Hispanic male also at times drove a blue GMC pickup with "nice wheels."

Based on the information provided by the confidential informant, the Tulsa County Drug Task Force established surveillance at the apartment complex to observe the apartment and white van identified by the informant. The task force believed that the marijuana was in the white van, which was parked in the apartment parking lot for the entire time of the task force's surveillance.

Deputy Ramsey met with the confidential informant at a location near the apartment complex. The informant pointed to a blue pickup truck which happened to be driving by and identified the blue truck as being driven by the Hispanic man involved in the drug transactions.

The blue pickup truck identified by the informant arrived at the apartment complex at approximately 11:00 a.m. The surveillance team observed an Hispanic male get out of the blue truck and go into the previously identified apartment. Within a few minutes, two Hispanic males exited the apartment and got into the blue pickup truck. Police personnel followed the blue pickup truck to a shopping area where a Home Depot and a Staples store were located. The government believes that the two men went into these stores. The blue pickup truck returned to the apartment at about 1:15 p.m. One of the Hispanic men

placed a large plastic bag in the white van. Furthermore, the men moved flattened boxes from a maroon van in the parking lot and placed them in the white van. As predicted by the confidential informant, the Hispanic men subsequently left the apartment complex with one of them driving the white van and the other driving the blue pickup truck. The blue truck was following behind the white van.

Members of the surveillance team then determined to follow the two vehicles to obtain more information, but they were concerned about losing the vehicles in the heavy traffic and nearby road construction. Accordingly, they decided to stop the white van which they believed was transporting a large quantity of marijuana, before it was able to elude them in traffic. In accordance with that decision, Captain Thomas Huckeby pulled out into traffic behind the blue pickup, which was, in turn, following the white van. He activated his lights and siren. Captain Huckeby passed the blue pickup and pulled over the white van.[2]

---

[2]The government alleges that the blue pickup, driven by Mr. Juarez's co-defendant Juan Gonzalez-Guytan, failed to pull over promptly when Captain Huckeby activated his lights and siren behind Mr. Gonzalez-Guytan's vehicle (the blue pickup) which was, in turn, following the white van. Accordingly, another officer followed Mr. Gonzalez-Guytan and pulled him over for failing to heed an emergency vehicle. Since Mr. Gonzalez-Guytan is not a party to this appeal, we do not address any issue relating to the stop of Mr. Gonzalez-Guytan. We do note, however, that it appeared to the police that the blue truck was blocking the van from their following police vehicles, which only contributed to the police officers' suspicions concerning the white van.

Defendant Juarez was driving the white van. Captain Huckeby pulled out his revolver and ordered Mr. Juarez out of the van. The captain explained his decision to do this in the suppression hearing: "[W]hen I first pulled the vehicle over with the understanding that there was 600 pounds of marijuana in there, I opened my vehicle, got out, and noticed the driver making some movements that concerned me. So I pulled my weapon and approached the vehicle asking the driver for his hands." Tr. of Supp. Hr'g at 88, R. Vol. 2. The officer further testified that, when Mr. Juarez opened the door of the van, the officer "first noticed the strong odor that I know to be marijuana. And then, . . . he was doing something under the seat or to the side of the seat. I noticed . . . what I believed at the time to be scales and plastic containers, baggies, things like that. I even believe I saw a plastic tubing, if I remember right." Id. at 89.

Mr. Juarez exited the van and was handcuffed. A drug-seeking dog was summoned to the scene and the dog alerted to the van. Authorities then searched the van and found approximately 500 pounds of marijuana in black bags, as well as freezer bags and scales. Mr. Juarez was arrested and made incriminating statements, after being read his Miranda rights in Spanish.

Police authorities subsequently obtained a search warrant for Mr. Juarez's apartment, where they found methamphetamine and a large amount of cash. Mr. Juarez moved to suppress the evidence seized from the van he was driving, as well as the evidence recovered from his apartment and his post-arrest statements,

on the ground that the initial stop of his van was illegal.  The magistrate judge to whom the matter was referred held an evidentiary hearing and recommended denial of Mr. Juarez's motion.  The district court adopted the magistrate judge's report and recommendation and denied the motion.  This appeal followed.

**DISCUSSION**

"In reviewing the denial of a motion to suppress, we review the factual findings of the district court for clear error, viewing the evidence in the light most favorable to the government, and review de novo the reasonableness of the government's actions under the Fourth Amendment."  United States v. Fox, 600 F.3d 1253, 1257 (10th Cir. 2010) (citation and quotation marks omitted).

Mr. Juarez first challenges the stop of the van he was driving.  He claims the "stop of the van was effectuated because the officers involved were afraid the contraband might get away from them in the traffic and not for a reason that would furnish justification for the stop or investigative detention or probable cause for an arrest."  Appellant's Br. at 9.  He further asserts that "[a]ny and all evidence, statements and other items seized from Mr. Juarez are tainted and are 'fruits of the poisonous tree' and must also be suppressed."  Id. at 9-10.[3]

_____

[3]In his objections to the report and recommendation of the magistrate judge, Mr. Juarez asserted that "[t]he initial stop of the defendant was based upon mere suspicion, hunches, and panic initiated by the fear of law enforcement officers that they would lose what they believed to be a load of drugs in the white van

(continued...)

The government responds that the officers had probable cause to stop the van based on the information provided to them by the reliable informant as well as the information they themselves gleaned from their surveillance. Mr. Juarez does not specifically challenge the reliability of the informant, except to challenge his motivation for providing information.[4] We have held that "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004) (further quotation omitted). There was obviously sufficient independent corroboration here. At a minimum, the government argues, the officers had reasonable suspicion for an investigative detention, and Captain Huckeby's smell of marijuana and the dog's alert to the van provided ample probable cause to search the van and arrest Mr. Juarez.

We agree with the government that the officers had, at a minimum, sufficient information for an investigatory stop of the van. As we have stated on

---

[3](...continued)
driven by defendant." Defendant's Objections to R. & R. at 8, R. Vol. 1 at 75. Contrary to Mr. Juarez's arguments, however, we conclude that the concern that the van might get away in heavy traffic actually cuts in favor of the officers' actions in this case. The van's very mobility undermines Mr. Juarez's argument that the officers here should have obtained a warrant prior to stopping his van.

[4]Mr. Juarez alleges that the informant was paid by the Tulsa County Sheriff's Drug Task Force, that he/she had "legal problems," and was in some way "assisted by" one of the officers involved in Mr. Juarez's arrest. Appellant's Br. at 8. This simply suggests the motivation for the informant's information; it does not undermine the accuracy of that information, as the police officers observed from their own surveillance.

numerous occasions, "[t]he Fourth Amendment protects individuals from unreasonable searches and seizures." United States v. Simpson, 609 F.3d 1140, 1146 (10th Cir. 2010). One type of seizure is "an investigatory stop, which is reasonable only if 'justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" Id. (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). While an arrest requires probable cause, an investigatory detention is constitutional if supported by the lesser standard of reasonable suspicion: "the officer must have reasonable suspicion to believe that criminal activity may be afoot." Id. (further quotation omitted).

Furthermore, "the existence of objectively reasonable suspicion of illegal activity 'does not depend upon any one factor, but on the totality of the circumstances.'" Id. (quoting United States v. Soto, 988 F.2d 1548, 1555 (10th Cir. 1993). We also must accord deference to an officer's experience and increased ability to distinguish between innocent and suspicious actions. Thus, "[t]he evaluation is made from the perspective of the reasonable *officer*, not the reasonable *person*." United States v. Guerrero, 472 F.3d 784, 787 (10th Cir. 2007) (internal quotation marks omitted).

In this case, at the time the officers stopped Mr. Juarez's van, they had information from a reliable informant, which information had been corroborated by the officers' observations while conducting surveillance of Mr. Juarez and his co-defendant. They had seen both vehicles identified by the informant, at the

-8-

location identified by the informant. The officers witnessed suspicious behavior at the apartment, followed by the departure of the two vehicles, driving in tandem, again as predicted by the informant. When the police determined to pull over the van, the blue pickup appeared to be acting as a blocking vehicle for a distance; when the van finally stopped, Officer Huckeby observed furtive behavior by Mr. Juarez, and detected a strong smell of marijuana. These developments only enhanced the officers' reasonable suspicion, based on the informant's information, that criminal conduct was afoot and that the van should be stopped. Further, "a positive dog alert gives officers probable cause to search." United States v. Parada, 577 F.3d 1275, 1281 (10th Cir. 2009). All of those circumstances justified the arrest of Mr. Juarez.

Finally, the search warrant for Mr. Juarez's apartment was based upon the informant's information, the surveillance, and the search of the white van, which yielded a large quantity of marijuana and drug paraphernalia.[5]

---

[5]Mr. Juarez also makes a brief argument that the use of a drawn weapon and handcuffs when arresting him and taking him out of the van was unjustified under the circumstances. We agree with the government that it was justified. We have already concluded that the police had probable cause to arrest Mr. Juarez once his van had been stopped, its contents identified, and his conduct during the stop had been determined, by an experienced officer, to be suspicious and possibly dangerous.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Mr. Juarez's motion to suppress.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge