**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEANTA MARQUIS LONG, a/k/a
Deante Marquis Long,

    Defendant - Appellant.

No. 13-5082

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:11-CR-00086-JHP-1)**

---

Jimmy Lance Hopkins, CJA Panel Member, Tahlequah, Oklahoma, for Defendant - Appellant.

Leena Alam, Assistant United States Attorney, (Danny C. Williams, Sr., United States Attorney, and Janet Sue Reincke, Assistant United States Attorney, on the brief), Tulsa, Oklahoma, for Plaintiff - Appellee.

---

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

---

**HARTZ,** Circuit Judge.

---

## I.    INTRODUCTION

A jury convicted Defendant Deanta Marquis Long of being a felon in possession of firearms and ammunition, attempting to manufacture 28 grams or more of cocaine base, possessing cocaine with intent to manufacture cocaine base, and possessing firearms in furtherance of drug-trafficking crimes. The primary focus of his appeal is the affidavit for a search warrant that led to discovery of the evidence against him. The affidavit recited that a confidential informant had recently observed cocaine in the apartment to be searched. Defendant contends (1) that the affidavit failed to provide probable cause because it did not identify or adequately describe him and the informant's information was not corroborated by police investigation of the alleged criminal activity; (2) that he was entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the veracity of the affiant officer; and (3) that the district court erred in denying his motion to compel discovery of information regarding the informant. Defendant also challenges the admission of a compact disc (CD) found in the apartment that was titled "Cokeland" and had his picture on the cover.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court. The affidavit provided probable cause because a reliable informant with knowledge of the cocaine trade said that he or she had recently observed cocaine packaged for distribution at the premises to be searched. There was no need to identify the person responsible for the cocaine's presence or to conduct further investigation. A *Franks* hearing was unnecessary because Defendant offered no evidence, only

2

speculation, to suggest that the affiant officer had recklessly or intentionally asserted false information. And discovery regarding the informant was not required because Defendant failed to show that such discovery could help in his defense. In any event, when the district court interviewed the informant in camera under oath, the informant said nothing to support Defendant's suspicions. Finally, the CD was sufficiently probative that the court did not abuse its discretion in admitting it into evidence despite a speculative possibility that it would create unfair prejudice.

## II. BACKGROUND

On April 20, 2011, Officer David Brice of the Tulsa Police Department obtained a warrant to search an apartment in Tulsa, Oklahoma. The affidavit in support of the warrant stated in pertinent part:

> The residence to be searched is located . . . [at] 2146 South 109th East Avenue Apartment B, City of Tulsa, Tulsa County, State of Oklahoma.
>
> The named defendant, or other persons in whose possession they have placed the following described property for concealment, does now . . . keep . . . in their possession and under their control certain dangerous substances, to wit:
>
> Cocaine, fruits, instrumentalities, and other controlled dangerous substances
>
> . . . .
>
> Your affiant states that within the last 72 hours your affiant made contact with a reliable confidential informant (herein referred as a RCI). The RCI has in the past given information to your affiant and other officers in excess of three occasions. Your affiant states that this RCI was first utilized in October of 1996. The RCI has been able to make controlled dangerous substance purchases, further investigations, and enabled officers to obtain

3

narcotic search warrants. The RCI has assisted in investigations leading to seizures of cocaine and firearms. Your affiant states that within the last three months the RCI's information resulted in the seizure of a quantity of cocaine. Your affiant further states that since 1996, other subjects arrested subsequent to information received from this RCI have been successfully charged with narcotic violations. Your affiant further states that your affiant or any other officers has never found the information that the RCI has given your affiant to be untrue or misleading. Your affiant states that while conducting investigations with this RCI their reliability has been consistently verified throughout the investigations he/she assisted your affiant and other officers. The information that the RCI has provided in the past has been up to date and vital on multiple narcotics investigations. Your affiant further states that the RCI has shown extensive knowledge involving the selling and trafficking of cocaine.

Your affiant states that while with the RCI, the RCI stated that a Black male, is selling cocaine. The RCI directed your affiant to 2146 South 109th East Avenue #B and stated that was the residence the Black male was selling cocaine from.

Your Affiant states that within the last 72 hours the RCI has made contact with the Black male inside 2146 South 109th East Avenue #B. While inside 2146 South 109th East Avenue #B the RCI observed an amount of cocaine. The RCI stated that the cocaine was packaged for distribution.

Your affiant further states that within the last 72 hours the RCI was able to point out a vehicle that is driven by the Black male. That vehicle is a Black Chevrolet Suburban bearing Oklahoma Tag 673GNH. At this time this vehicle was observed in North Tulsa.

Your affiant further states that within the last 24 hours while conducting surveillance at 2146 South 109th East Avenue #B, he observed the Black Chevrolet Suburban bearing Oklahoma tag 673GNH pull into the parking lot of 2146 South 109th East Avenue #B. Your affiant observed a Black male exit the Chevrolet Suburban, walk to the door of 2146 South 109th East Avenue #B, and use a key to enter the residence.

R., Vol. 1 pt. 3 at 418–19 (full capitalization and bolding omitted).

Officer Brice and several other officers executed the warrant. When Brice knocked on the door, Defendant opened it. He was holding a glass jar containing a white powdery substance. Brice informed him that he was a police officer with a warrant to search the apartment. Defendant attempted to shut the door and retreated into the apartment. Officers pursued him to the kitchen. They found him on the floor, where broken glass and white powder were strewn about. A pot of water was boiling on the stove. There was a gun on the floor. Three other men were in the kitchen. Officers placed everyone in handcuffs.

Officers found "all together" on the kitchen counter three baggies of white powder, a digital scale with white powder on it, a box of baking soda, and a CD case. *Id.*, Vol. 3 pt. 1 at 149–50. The CD had the title "Cokeland," the artist name "Francis H. Whyte," and Defendant's picture on the cover. Aplt. Br. at 10. The picture showed Defendant pouring liquid from a liquor bottle into a measuring cup, with a scantily clad woman on a limousine in the background. Elsewhere in the kitchen, officers found additional cocaine for a total of about 140 grams, including the weight of packaging. A second gun was in the cabinet above the counter.

The apartment did not look lived in. The refrigerator was empty and the only food in the kitchen was a package of ramen noodles. Upstairs there was no furniture, and downstairs the only furniture was a chair and a TV on a shelf. The closets were empty. In the downstairs bathroom the bathtub lacked a shower curtain, and there were no

5

toiletries around the bathtub.  In the upstairs bathroom, officers found a toothbrush and an electric razor with a shaving kit but the cabinets were empty.

On Defendant's person, officers found a wallet with $825, an envelope addressed to Frank Whyte, and $657 in a pocket.  Defendant had the name Francis Whyte tattooed on his forearm.

Based on the evidence found in the apartment, officers obtained a warrant to search Defendant's house, where they recovered $3,650 in a cereal box, ammunition, and a small amount of marijuana.

After being indicted in the United States District Court for the Northern District of Oklahoma, Defendant unsuccessfully moved to suppress the evidence from the searches. He attacked the sufficiency on its face of the affidavit for the apartment search, requested a *Franks* hearing, and sought discovery concerning the confidential informant.  The court denied the motions after interviewing the informant under oath in camera.  Defendant also unsuccessfully moved to exclude the CD as evidence at trial.  He was convicted after a three-day trial.

## III.  DISCUSSION

### A.  Probable Cause

A search warrant can issue only upon a showing of probable cause.  *See United States v. Biglow*, 562 F.3d 1272, 1275 (10th Cir. 2009).  The supporting affidavit must provide a "'substantial basis'" to conclude that "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v.*

6

*Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 238 (1983)).

On its face the affidavit satisfies that standard. A trustworthy person knowledgeable about the cocaine trade said that he or she had recently seen cocaine packaged for distribution at the location to be searched. Defendant's two attacks on the sufficiency of the affidavit are misconceived. First, he complains that the affidavit provides no identification of him except as a "Black male." R., Vol. 1 pt. 3 at 419. But there was no need for further description. This is not a case where an affidavit describes criminal behavior by a suspect and then tries to connect the suspect to the place to be searched. In that circumstance it is often necessary to provide the suspect's name and then establish that the person of that name resides or works at the place to be searched. *See United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 (10th Cir. 1992). Here, however, the intermediate step (which requires the suspect's name) is unnecessary because the contraband was observed at the place to be searched. None of the cases relied on by Defendant, such as *Poolah v. Marcantel*, 565 F.3d 721 (10th Cir. 2009), involve that circumstance. And we know of no authority that officers cannot search a place where there is likely to be contraband or evidence of a crime unless they can identify the likely perpetrator. As the Supreme Court has said, "Search warrants are not directed at persons; they authorize the search of places and the seizure of things, and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Stanford Daily,* 436 U.S. 547, 555 (1978) (brackets and internal

7

quotation marks omitted); *see United States v. Rodrigue*, 560 F.3d 29, 34 (1st Cir. 2009) ("[Defendant's] relationship to the campsite was neither here nor there for purposes of establishing probable cause to search for marijuana.").

Second, Defendant complains that the informant's assertions were not corroborated by independent police investigation. To be sure, corroborating circumstances are required. As we said in *United States v. Mathis*, "'In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observation, *so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.*'" 357 F.3d 1200, 1204 (10th Cir. 2004) (emphasis added) (quoting *Jones v. United States*, 362 U.S. 257, 269 (1960)). But the corroborating circumstances need not be observations specific to the alleged wrongdoing supporting the warrant. In particular, they may be circumstances showing the trustworthiness of the informant, such as a history of providing accurate (corroborated) information. For example, in *Jones* one of the grounds "for accepting the informant's story" was that "[t]he informant had previously given accurate information." 362 U.S. at 271.

Any suggestion that more is required is undermined by what the Supreme Court said in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969). Although both those decisions were overruled in *Gates*, any affidavit that passed muster under them would also suffice under *Gates*, which held that a totality-of-the-

8

circumstances approach is more faithful to the Constitution than the rigid, more restrictive tests of *Aguilar* and *Spinelli*. *See Gates*, 462 U.S. at 230–39; *see also United States v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000) (en banc) ("[T]he Court rejected the rigid tests that had evolved . . . in favor of a 'totality of the circumstances' approach."); 2 Wayne R. LaFave, Search and Seizure § 3.3(a) (5th ed. 2012) ("[C]ourts should continue to place considerable reliance upon the elaboration of these factors in earlier cases decided under the now-discarded *Aguilar* formula."). We are aware of no case law or other authority that an affidavit adequate under *Aguilar* and *Spinelli* may not pass muster under *Gates*.

In *Aguilar* the Court, although holding that the affidavit in that case did not provide probable cause, pronounced that "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant." 378 U.S. at 114. For the informant hearsay to suffice, however, the affidavit needed to apprise "the magistrate . . . of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was credible or his information reliable." *Id.* (citation and internal quotation marks omitted). *Spinelli* made clear that satisfaction of these requirements was sufficient to establish probable cause. Indeed, the Court used the requirements as the *standard* for satisfying probable cause—that is, corroboration of a tip

9

is sufficient for probable cause if the corroboration makes the tip as trustworthy as it would have been had the *Aguilar* standard been satisfied. The Court wrote:

> If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: *Can it fairly be said that the tip*, even when certain parts of it have been corroborated by independent sources, *is as trustworthy as a tip which would pass* Aguilar*'s tests without independent corroboration*?

*Spinelli*, 393 U.S. at 415 (emphasis added).

Courts have continued post-*Gates* to hold that probable cause can be based solely on information from a reliable, credible informant. *See United States v. Pulliam*, 748 F.3d 967, 970–71 (10th Cir. 2014) (probable cause where informant had "reliably led police to contraband in the past" and tip was based on personal knowledge); *Allen*, 211 F.3d at 972–76 (probable cause can be based on statement by reliable informant with personal knowledge); *United States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993) ("Even where the information tendered consisted solely of the uncorroborated report of an anonymous informer, probable cause would normally be found to exist where a law enforcement officer was able to say that the informant had provided reliable information in other matters."). Here, the affidavit sufficed because the informant's statement was corroborated by the affiant's assertions of the informant's prior accuracy in reporting on cocaine offenses and the informant's expertise on cocaine trafficking.

We reject Defendant's challenge to the showing of probable cause in the affidavit.

B.      **Discovery Regarding the Informant**

Defendant filed a pretrial motion seeking the name and last known contact information of the informant, "[a]ny documents that relate to or confirm the existence of the [informant]," and "[a]ll information relating to the [informant] contained within the Tulsa Police Department's ALL STAR database, or any similar database." R., Vol. 1 pt. 2 at 250. Acknowledging that the court could first review the information in camera before deciding whether defense counsel would have access, *see Pennsylvania v. Ritchie*, 480 U.S. 39, 60–61 (1987), the motion claimed that discovery of these matters would serve two purposes: to provide evidence that the alleged informant did not exist and to develop evidence useful to his defense (if there really was an informant). His principal interest in the disclosure was to obtain evidence for a *Franks* hearing. We therefore first address his rights under that decision. To the extent that he sought disclosure for any other purpose, we then address his rights to disclosure under *Roviaro v. United States*, 353 U.S. 53 (1957).

### 1. *Franks*

Defendant complains that the district court did not comply with the mandate of *Franks*. In that case the Supreme Court considered whether the Fourth Amendment ever requires "that a defendant be permitted to attack the veracity of a warrant affidavit after the warrant has been issued and executed." *Franks*, 438 U.S. at 164. The Court decided:

> [W]here the defendant makes a *substantial preliminary showing* that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the

11

Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56 (emphasis added). It is not the veracity of the informant that is at issue, but only the veracity of the affiant. *See id.* at 171 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."). "Defendants must point out specifically the portion of the warrant affidavit that is claimed to be false . . . ," *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (internal quotation marks omitted), and support their allegations with reliable witness statements or explain their absence, *see id.*

This court has not yet decided whether there are ever circumstances in which a defendant making a *Franks* claim can obtain disclosure of the informant. *See United States v. Schauble*, 647 F.2d 113, 117 (10th Cir. 1981). But we *have* held that disclosure is not required if the defendant does not make the "substantial preliminary showing" required by *Franks*. *Id.* (internal quotation marks omitted). In *Schauble* the defendant challenged the statement in a search-warrant affidavit that the informant said he had been "at the residence" in the prior 48 hours and had seen what he believed to be marijuana. *Id.* at 114–15 (internal quotation marks omitted). To show that no informant had observed evidence of drugs in his house at the alleged time, the defendant presented two affidavits stating "that only one visitor came to the house in that time span and that this person came no further than the front porch, from where it is physically impossible to see inside the house because of a partition immediately inside the front door." *Id.* at 117. As

12

further support for the claim that the affiant had not entered the residence, the defendant pointed out that a virtually identical affidavit by another officer for a different search had said that the informant had been "inside" the residence rather than just "at" it. *Id.* (internal quotation marks omitted). Nevertheless, we concluded that the defendant had not made the necessary showing because a defendant must show "that [the *affiant*] knew of or recklessly disregarded the informant's inability to see what the informant claimed to see, not merely that the informant did not actually see it." *Id.* (emphasis added).

Defendant did not make an adequate evidentiary showing under *Franks*. The relevant part of his *Franks* motion states:

> There is no way that a "reliable confidential informant" of 16 years can go to a man's home to visit him and not know the name of the man he went to visit. The affiant claims that the [informant] has been in contact with the defendant on multiple occasions. The affidavit states that the [informant] went to visit the defendant at his home and while inside the defendant's home, the [informant] saw an amount of drugs packaged for distribution. If these allegations were true, the [informant] would have made a controlled buy. I'm sure if this defendant showed the [informant] drugs packaged for distribution, making a controlled buy would have been easy for the [informant] to do. At the very least the [informant] could have submitted an affidavit with a detailed description of the inside of the residence, stating where he saw the drugs to prove he has actually been inside the residence. There is no video, audio, or simultaneous surveillance or a controlled buy to validate the [informant's] claims. Plus the affiant failed to do any type of investigation into the defendant. So the [informant] allegations have no factual confirmation.
>
> The [informant] couldn't even tell the affiant the defendant's name and the [informant] couldn't tell the affiant what the defendant looks like. So with no name, no description, no controlled buy, no video, no audio, or any type of independent investigation by the affiant, the [informant's] alleged allegations alone are clearly lacking the probable cause necessary to validate the warrant. . . .

13

It is unimaginable how a well-trained [informant] of 16 years can be meeting the defendant at his home, and still be unable to provide the affiant a description of the defendant. In fact it should be obvious that the [informant] has never seen the defendant before. If the [informant] can't give a name, or description of the defendant, the [informant] doesn't know the defendant, so how can the [informant] be meeting the defendant at his home?

The defendant has his first and last name tattooed down the full length of both his forearms plus various other tattoos that are in open view. The defendant has very distinctive facial features that he can so easily be identified by, that for the [informant] to not be able to acknowledge any of it, it makes the [informant] claims completely unbelievable.

The defendant has a bald head, and a big birth mark in the middle of his face, and the defendant has one of a kind 'permanent' diamond and gold dental work. So from a totality of all the defendant's physical attributes, and the [informant] being completely in the blind to all of it, it should be painfully obvious that the [informant] doesn't know the defendant.

R., Vol. 1 pt. 2 at 294–96.

What is notably missing from this argument is any *evidence* that the allegations of the affidavit are false. It consists solely of speculation that if the affidavit were true, the police would have conducted further investigation (such as a controlled buy) and included more information in the affidavit, even though additional investigation and more detail in the affidavit were not necessary for a lawful search. [1]

---

[1] Testimony at trial provided an explanation for the omission of one detail—the name of the "Black male." On cross-examination of Officer Brice, Defendant (acting pro se) asked if the informant had "reference[d] any one person" when providing information about the residences that were searched. R., Vol. 3 pt. 1 at 186. Brice answered that the informant had "referenced an individual by the name of Frank." *Id.* When Defendant asked why Brice did not include the name in the affidavit, he said that at the time he did

Continued . . .

In any event, a magistrate judge, at the invitation of the government, interviewed the informant ex parte and in camera under oath. He found "that the confidential informant did exist, that the confidential informant had knowledge of defendant and his drug activity, and that the confidential informant provided the relevant information to the officers who later applied for the search warrant." *Id.*, Vol. 1 pt. 3 at 440. Further exploration of the issue at an evidentiary hearing was unnecessary. If the court reasonably determines after an ex parte interview that the informant cannot assist the defendant, the interest in protecting the informant trumps the interest of the defendant in taking a crack at eliciting helpful testimony from the informant. *See United States v. Licavoli*, 604 F.2d 613, 621 (9th Cir. 1979) ("The district court conducted an [i]*n camera* hearing [and,] [a]fter interviewing one of the confidential informants and examining the affidavit of the other, . . . [properly] concluded that no showing of misrepresentation justifying a full evidentiary hearing had been made.").

We reject Defendant's *Franks* argument and the request for discovery in support of it.

### 2. *Roviaro*

Defendant may also have been contending below that discovery regarding the informant may have been helpful for reasons other than a *Franks* hearing. Suggesting

---

not know whether the name "Frank" was an alias or the suspect's real name. *Id.*, Vol. 3 pt. 2 at 230. Brice explained that drug dealers often use street names to conceal their identities. *See id.* at 230–31.

15

that the informant could support a claim of mistaken identity, he invoked *Roviaro*, 353 U.S. at 62, which requires disclosure of an informant in limited circumstances where the defendant's need for information to prepare his defense outweighs the government's need to protect its sources. We review for abuse of discretion a denial of a motion to compel discovery regarding a confidential informant. *See United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990).

The balance under *Roviaro* did not favor disclosure in this case. In general, "[d]isclosure of an informant is not required . . . where the informant is not a participant in or a witness to the crime charged." *Moralez*, 908 F.2d at 567. And in particular, disclosure is rarely necessary when, as here, the informant's role was only as a tipster who provided probable cause for a search. *See id.* at 568.

There was no special reason for disclosure here. As the court below stated, "Defendant's only colorable argument . . . is that there has been a case of mistaken identity which could reduce or eliminate some or all of the charges against him." R., Vol. 1 pt. 2 at 290. But there is no dispute that Defendant was the person who answered the door at the first location searched and was closely connected to the cocaine powder found there. It is utter speculation—and, worse, irrelevant—that he may not have been the "Black male" mentioned in the affidavit. Because the informant had nothing relevant to say regarding Defendant's guilt of the charged offense, there was no need to question him. Defendant's reliance on *United States v. Robinson*, 583 F.3d 1265, 1274–76 (10th

16

Cir. 2009), in which the informant was "the government's star witness" at trial, *id.* at 1267, is misplaced.

Moreover, as previously noted, the magistrate judge questioned the informant under oath. He determined that "the confidential informant provided no information that would assist defendant in this case." R., Vol. 1 pt. 2 at 290. Nothing more was required. As we have said, "[A]n *in camera* hearing is the appropriate procedural vehicle for determining whether the informant's testimony would lend significant credence to [the] defense." *Gaines v. Hess*, 662 F.2d 1364, 1369 (10th Cir. 1981) (informant had arranged drug sale between defendant and police officer and was present at the sale); *see United States v. Martinez*, 487 F.2d 973, 977 (10th Cir. 1973); *United States v. Cortese*, 614 F.2d 914, 922 (3d Cir. 1980) (denying release to defense attorney of notes of in camera testimony because "disclosure to attorneys is likely to compromise the policy behind the informer privilege").

The district court did not abuse its discretion in denying any further disclosure regarding the informant.

### C.  Admission of CD

At trial the district court admitted into evidence a CD found in the apartment where Defendant was arrested. It was titled "Cokeland" by "Francis H. Whyte." On the CD cover was a picture of Defendant pouring liquid from a liquor bottle into a measuring cup. An officer testified at trial that, in his experience, the image related to the manufacture of cocaine base. The CD was found in the kitchen on a counter next to three

baggies of white powder, a digital scale with white powder on it, and a box of baking

soda.  Defendant contends that the CD was inadmissible at trial.

We review challenges to the admission of evidence for abuse of discretion, *see*

*United States v. Caraway*, 534 F.3d 1290, 1300–01 (10th Cir. 2008), reversing only if the

decision was "outside the bounds of permissible choice in the circumstances." *United*

*States v. Shippley*, 690 F.3d 1192, 1197 (10th Cir. 2012) (internal quotation marks

omitted).  "[E]vidence is relevant if it has any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence." *Caraway*, 534 F.3d at 1301 (internal quotation

marks omitted).  A "court may[, however,] exclude relevant evidence if its probative

value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.

"To be *unfairly* prejudicial, the evidence must have an undue tendency to suggest

decision on an improper basis, commonly, though not necessarily, an emotional one."

*Caraway*, 534 F.3d at 1301 (internal quotation marks omitted).

Defendant's arguments against admissibility of the CD have been thin.  His

pretrial motion in limine simply asserted that the CD was unfairly prejudicial because the

title contained the word "coke," a slang term for cocaine, and "would allow the jury to

reach an inappropriate conclusion regarding [Defendant's] guilt regarding cocaine-related

charges."  R., Vol. 1 pt. 4 at 570–71 (internal quotation marks omitted).  His opening

brief in this court asserted that the CD had no probative value and may have "impressed

upon the jury impermissible evidence of bad character."  Aplt. Br. at 54.  The gist of the

18

argument in his reply brief was that "[t]here was no probative value of showing the jury a photograph of [Defendant], along with that of a scantily-clad young female, pouring a substance into a measuring cup, along with the word 'Cokeland'. The photograph on the CD had absolutely no probative value, and the only result of its admission was prejudice to [Defendant]." Reply Br. at 13. And at oral argument in this court Defendant complained that it was prejudicial to show the jury the CD image depicting him manufacturing cocaine and suggested that a musician who represents himself as involved in cocaine may not actually be a dealer.

We are not persuaded. There were four men in the kitchen where the cocaine was found. The CD singled Defendant out. Because the CD had his picture on it, it would be reasonable to infer that it belonged to him. And the proximity to the cocaine of something he owned increased the likelihood that the cocaine was his too. Moreover, the cocaine message on the CD cover suggested that its proximity to the cocaine was not just happenstance. The chain of inference was not that Defendant is a man of bad character and therefore must be guilty.

We appreciate Defendant's concern that artistic creations not be misused by the jury to infer that the artist is a criminal. The issue is a recurring one in the courts, with the ruling turning on the specific facts of the case. *See, e.g.*, *United States v. Moore*, 639 F.3d 443, 447–48 (8th Cir. 2011) (recording of defendant rapping was admissible to show defendant's knowledge of drug distribution and motive for engaging in it, although vulgar, inflammatory, and prejudicial language created danger of unfair prejudice; no

19

plain error); *United States v. Gamory*, 635 F.3d 480, 493–94 (11th Cir. 2011) (error to admit rap video produced by defendant's recording studio when defendant did not appear in the video; there was no evidence that he authored the lyrics or adopted its views or values; and the violence, profanity, and misogyny on the video presented a substantial danger of unfair prejudice); *United States v. Fraser*, 448 F.3d 833, 839–41 (6th Cir. 2006) (to rebut defendant's claim that he was duped into participating in counterfeit check scheme, prosecution could offer excerpts from defendant's book describing the scheme); *United States v. Hull*, 419 F.3d 762, 770 (8th Cir. 2005) (after defense counsel's opening statement characterized defendant's music company as producing hip-hop music, prosecution could question him about whether the music was actually gangster rap); *United States v. Price*, 418 F.3d 771, 783 (7th Cir. 2005) (rap lyrics on recording by defendant's group were possibly prejudicial but harmless); *United States v. Foster*, 939 F.2d 445, 456–57 (7th Cir. 1991) (handwritten verses found on defendant were admissible to show his familiarity with drug code words and trafficking, rebutting his claim of naivete and lack of knowledge of the contents of his suitcases); *United States v. Brown*, 374 F. App'x 927, 937 (11th Cir. 2010) (defendant's writings referencing firearms admissible to show knowledge of firearms in back of vehicle); *United States v. Stuckey*, 253 F. App'x 468, 482–83 (6th Cir. 2007) (defendant's rap lyrics about "shooting snitches, wrapping them in blankets, and dumping their bodies in the street" were admissible when he was accused of doing just that); *United States v. Orr*, No. 92-10681, 1994 WL 384361, at *3 (9th Cir. July 21, 1994) (unpublished table

20

decision) (manuscript of unpublished book admissible against defendant accused of setting arson fires because similarities between arsonist in the book and defendant and between the fires in the book and the charged ones made it relevant on issues of modus operandi and identity); *Washington v. Hanson*, 731 P.2d 1140, 1144–45 (Wash. Ct. App. 1987) (defendant's fictional writings were inadmissible character evidence). But the CD had probative value aside from any inference based on character, and, in our view, the district court could reasonably believe that the probative value was not substantially outweighed by the danger of unfair prejudice.

The district court did not abuse its discretion in admitting the CD at trial.

## IV.  CONCLUSION

We AFFIRM the judgment of the district court.