**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Yuren ARANDA–DIAZ, Defendant–Appellant.**

**Nos. 14–2089, 14–2093.**

United States Court of Appeals, Tenth Circuit.

Aug. 5, 2015.

Laura Fashing, David M. Walsh, Office of the United States Attorney, Albuquerque, NM, for Plaintiff–Appellee.

Kathleen McGarry, McGarry Law Office, Glorieta, NM, for Defendant–Appellant.

Before LUCERO, TYMKOVICH, and MATHESON, Circuit Judges.

## ORDER AND JUDGMENT *

CARLOS F. LUCERO, Circuit Judge.

Yuren "Oso" Aranda–Diaz pled guilty to several immigration and firearm-related

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive val-

counts. A jury subsequently found him guilty of two counts related to heroin distribution in violation of 21 U.S.C. § 841(b)(1)(C) and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Prior to his guilty plea and trial, Aranda–Diaz moved to suppress evidence gathered during a search of his vehicle. The district court denied his motion. Aranda–Diaz now appeals that denial. He also argues that the evidence was insufficient to support his § 924(c) conviction. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

On October 2, 2012, a confidential informant (the "CI") called Albuquerque Police Department ("APD") Detective Herman Martinez. The CI said he could arrange to purchase $750 worth of heroin through an unwitting intermediary (Jessie Lopez). Martinez had previously worked with the CI at least twice and considered him to be reliable. After agreeing to facilitate the "buy-bust" operation, Martinez met with the CI, and searched him and his vehicle to ensure that he did not have drugs or currency in his possession. Martinez then provided the CI with $750 in previously-photocopied bills. During this meeting, Martinez heard Lopez call the CI and tell him to hurry because the source of the heroin, an individual named Oso, "was ready and was kind of pushing the deal forward."

The CI then drove to Lopez's residence, where the drug transaction was supposed to occur, and which APD placed under surveillance. Lopez exited the residence and entered the CI's car, which promptly drove away. APD officers followed the vehicle, and a short time later Martinez received a text message from the CI reading "Fourth and Menaul." Martinez interpreted this to mean that the drug transaction was to take place at that location. He testified that although the CI driving away initially surprised him, the changed location itself "didn't really surprise [him]" because "in the big terms, this kind of always happens. Meet locations always change, and we're real flexible about being able to move from one location to another location."

Eventually, APD officers following the CI's vehicle witnessed it park on a residential street. APD Sergeant Patrick Ficke reported over the radio that he had "obtained a visual of the CI" and "that he was on Fifth Street, that he had seen a brown Chevy [S]uburban parked, and that another vehicle had pulled behind that vehicle and one of the occupants of the unknown vehicle had gone to the Chevy Suburban." The person from the unknown vehicle then returned to his vehicle and drove away. Martinez later testified that Ficke believed that he was witnessing another drug transaction.[1] Martinez also heard Ficke report over the radio that after the unknown vehicle drove away, Lopez exited the CI's vehicle, entered the Suburban, then returned to the CI's vehicle. During Lopez's absence, the CI telephoned Martinez and informed him that the CI had given Lopez the money and that Lopez was going to get the drugs. After Lopez returned to the CI's car, Martinez heard Ficke report that he observed the CI give the predetermined signal to indicate that the CI saw narcotics. Lopez and the CI then drove away.

---

ue consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

1. Ficke himself did not testify at the motion to suppress hearing or at trial because he had by that time resigned from the APD.

Officers later witnessed Aranda–Diaz exit the Suburban and knock on the door of a nearby house. Nobody answered, and he returned to the vehicle. Officers then executed an arrest. Aranda–Diaz was the only individual in the Suburban.

APD Sergeant Glen Stout testified that shortly after Aranda–Diaz was arrested, he noticed a gun on the driver's seat of the Suburban. He initiated a search of the vehicle. During this search, Stout noticed that a cup holder in the center console area was loose. He testified that in his experience "folks like to hide things in [the center console] area." He further explained that "[i]t's a natural area where there's a void, and in most vehicles the cup holders come out to sort of facilitate cleaning them versus, you know, having to clean out anything that spilled having it mounted in the car." In the void, Stout located a digital scale and a pill bottle that contained five individually-wrapped bags of what later proved to be heroin. In a subsequent interrogation conducted by Homeland Security Special Agent Jeremy Arellano, Aranda–Diaz admitted that he kept the gun for his "protection."

Aranda–Diaz moved to suppress all evidence recovered as a result of his arrest and search of his vehicle. He argued that APD officers lacked probable cause to arrest him, and that even if his arrest was lawful the officers nevertheless lacked probable cause to search his vehicle. He further argued that the search of his vehicle exceeded the scope allowable for a search incident to arrest, and that the search was not a permissible inventory search. The district court denied this motion, finding that probable cause supported both the arrest and the search of the vehicle. The district court also explained that the search of the vehicle was permissible as a search incident to arrest. Aranda–Diaz pled guilty to some of the charges

against him, and a jury found him guilty of several others. He timely appealed.

## II

Following the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Soza,* 643 F.3d 1289, 1291 (10th Cir.2011). "At a hearing on a pre-trial motion to suppress, the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." *United States v. Vercher,* 358 F.3d 1257, 1261 (10th Cir.2004) (quotations omitted).

## A

"Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *Cortez v. McCauley,* 478 F.3d 1108, 1116 (10th Cir.2007) (en banc) (quotations omitted). The probable cause inquiry is a "commonsense, practical question to be informed by the totality of the circumstances present in any particular case." *United States v. Mathis,* 357 F.3d 1200, 1204 (10th Cir.2004) (quotations omitted).

Aranda–Diaz contends that the participation of unwitting informant Lopez in the buy-bust operation vitiates probable cause because Lopez was not searched and his veracity and reliability were unknown to APD officers. Aranda–Diaz claims support from *United States v. Artez,* 389 F.3d 1106 (10th Cir.2004), which explains that "[t]he use of an unwitting informant introduces an additional layer of uncertainty to the transaction because it leaves open the possibility that the narcotics were acquired

not at the suspect residence but at the location where the confidential and unwitting informants met before and after the transaction." *Id.* at 1112. But as *Artez* further explains, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Id.* at 1111 (citing *United States v. Danhauer,* 229 F.3d 1002, 1006 (10th Cir. 2000)). Thus, the *Artez* court ·held that probable cause existed based on independent corroboration, even though an unwitting informant was used as an intermediary between a CI and the suspect. *Id.* at 1113; *see also United States v. Richardson,* 86 F.3d 1537, 1545 (10th Cir.1996), *abrogated on other grounds as recognized in Artez,* 389 F.3d at 1112 (concluding that probable cause existed despite the use of an unwitting intermediary due to the existence of corroborating information).

▪ As in *Artez* and *Richardson,* we hold that there was sufficient corroborating information in this case to establish probable cause to arrest Aranda–Diaz. Martinez had previously worked with the CI and found him to be reliable. Martinez overheard the CI and Lopez arranging the heroin sale. APD officers observed Lopez enter the CI's car and drive to a different location. Ficke witnessed both Lopez and an unknown individual participate in what he believed were drug transactions in the Suburban. While Lopez was in the Suburban, the CI telephoned Martinez and informed him that the CI had given Lopez the buy money and that he was going to get the drugs. After Lopez returned to the CI's vehicle, the CI gave officers the prearranged signal indicating that he saw drugs. ·Aranda–Diaz was the sole occupant of the Suburban. Under the totality of the circumstances, these facts plainly constitute reasonably trustworthy information "that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Morris,* 247 F.3d 1080, 1088 (10th Cir.2001).

## B

Having established the existence of probable cause to arrest Aranda–Diaz, we turn to the search of his automobile. Under the automobile exception to the warrant requirement, "police officers may stop and search a car if they have probable cause to believe it contains contraband, regardless of whether a traffic violation has occurred or a search warrant has been obtained." *United States v. Benard,* 680 F.3d 1206, 1210 (10th Cir.2012); *see also Arizona v. Gant,* 556 U.S. 332, 335, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) ("Circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.").

[2] Aranda–Diaz argues that even if his arrest was legal, it was unreasonable for officers to believe that they would find evidence relevant to his heroin distribution in the vehicle and, alternatively, that it was unreasonable to "dismantle" the cup holder during a search for that evidence. We disagree. Aranda–Diaz was the sole occupant of a vehicle from which APD officers witnessed two suspected drug transactions. Officers also found the buy money on Aranda–Diaz's person and observed a gun in plain sight on the driver's seat of his vehicle. Under these facts, it was reasonable for the officers to believe that evidence relating to heroin distribution would be found inside the Suburban.

▪ It is ·well settled that "once the officers' suspicions rise to the level of probable cause, they are empowered to search the entire vehicle, including the

trunk and all containers therein that might contain contraband." *United States v. Vazquez,* 555 F.3d 923, 930 (10th Cir.2009) (quotations omitted). Because the officers had probable cause to search the Suburban for evidence related to heroin distribution, the removal of the loose console did not violate Aranda–Diaz's Fourth Amendment rights. *Cf. United States v. Carbajal–Iriarte,* 586 F.3d 795, 803 (10th Cir.2009) (holding that cutting open the upholstery of a vehicle seat to search for drugs did not violate the Fourth Amendment because general probable cause existed to search the vehicle).

### III

We review de novo the sufficiency of the evidence to support a conviction for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). *United States v. King,* 632 F.3d 646, 650 (10th Cir.2011). In our review, we draw all reasonable inferences in the light most favorable to the jury verdict. *See United States v. Calloway,* 562 F.2d 615, 617 (10th Cir.1977).

■ To sustain a conviction under § 924(c), the government had to prove beyond a reasonable doubt that the gun facilitated Aranda–Diaz's drug trafficking offense in some way. *See United States v. Luke–Sanchez,* 483 F.3d 703, 706 (10th Cir.2007). We have "held that a firearm that is kept available for use if needed during a drug transaction, is possessed in furtherance of drug trafficking so long as such possession in furtherance of is the intent of the drug trafficker." *United States v. Avery,* 295 F.3d 1158, 1180 (10th Cir.2002) (quotations and alterations omitted). A reasonable jury could therefore have found that Aranda–Diaz possessed the requisite intent for possession of a firearm in violation of § 924(c) based on trial testimony indicating that a drug

transaction had taken place, the gun being found in plain view on the driver's seat of that Suburban, and Arellano's testimony that Aranda–Diaz stated that he kept the gun under his leg for protection because he was worried about his safety. Moreover, the driver's seat is in close proximity to the center console in which additional heroin was discovered. *Cf. King,* 632 F.3d at 657 ("Because the loaded rifle in this case was located immediately adjacent to the drugs, a reasonable jury could infer that it furthered [the defendant's] drug trade by protecting [him] and his merchandise.").

### IV

The judgment of the district court is **AFFIRMED.**