FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 12, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE VELARDE-PAVIA,

    Defendant - Appellant.

No. 20-2135
(D.C. No. 2:18-CR-02212-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **BRISCOE**, Circuit Judges.
_____

Based in part on information from a confidential informant ("CI"), police officers in Roswell, New Mexico obtained warrants to search Jose Velarde-Pavia's truck, his residence, and two other residences associated with him. Inside the truck, officers found and seized about 130 grams of methamphetamine and two firearms. And while searching him, the officers found about 5 grams of methamphetamine inside his pants pocket.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before trial, but after the searches, the government learned that the officer who signed the affidavit in support of the search warrant, Officer Gerald Juarez, had recently been using cocaine and sending sexually suggestive texts to the same CI.

After learning this, Velarde-Pavia filed two motions. In the first, he moved to obtain the CI's identity. In the second, he moved to suppress the methamphetamine seized from his truck and his pants pocket as well as the firearms seized from his truck. And he asked for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The district court denied both motions. At trial, Velarde-Pavia moved for acquittal, arguing that insufficient evidence supported the charges. The district court denied that motion too.

Now, Velarde-Pavia appeals the denial of his three motions. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

Officer Gerald Juarez, a longtime veteran of the Roswell Police Department's Metro Narcotics Task Force Division, worked with a CI who told him that Velarde-Pavia was selling methamphetamine. On June 7, 2018, with the CI's information, Officer Juarez signed an affidavit to support search warrants for Velarde-Pavia, his truck, and three residences associated with Velarde-Pavia. For purposes of this appeal, the relevant portions of the affidavit state as follows:

> 3. Affiant met with a reliable, credible and confidential informant. Said informant has assisted Affiant and other law enforcement personnel with controlled substance investigations, by providing information on more than three separate occasions that has led to the recovery of controlled substances.

4. Said informant has personally witnessed the sale of controlled substances on more than three separate occasions while working for Agents with the Chavez County Metro Narcotics Task Force. Said informant has personally purchased controlled substances for Agents with the Chavez County Metro Narcotics Task Force on more than three separate occasions.

5. Said informant has provided information which has proven to be truthful. Said informant has never provided false information to the knowledge of affiant. Said informant has associated with known Methamphetamine sellers and users and is familiar with the appearance of methamphetamine and how it is packaged and sold.

6. Affiant learned from the informant that within the past seventy-two (72) hours the informant has witnessed a subject known as Jose Velarde-Pavia to be selling Methamphetamine from his vehicle and has several residences where he stashed large amounts of narcotics.

7. Within the past 72 hours Agents during a controlled buy through surveillance observed a white truck bearing NM-LDN-973 a white Toyota associated to Mr. Velarde-Pavia leave 806 W. 11th and travel to 1500 W. Albuquerque. The truck was operated by Mr. Velarde-Pavia. Agents observed Mr. Velarde-Pavia outside his truck talking with a female outside of the residence. A short time later the truck returned departed (sic) from 1500 W. Albuquerque and returned to 806 W. 11th. The informant was able to purchase methamphetamine from Mr. Velarde-Pavia. Agents learned from the informant that Mr. Velarde-Pavia had travelled to an unknown location to pick up the Methamphetamine.

R. vol. 2 at 25–26. Based on Officer Juarez's affidavit, a state-court judge issued the search warrants.

Four days later, New Mexico police officers executed the warrants. Though they seized no evidence during the searches of the homes, police seized two guns and about 136 grams of methamphetamine from Velarde-Pavia's truck. In his pants pocket, the police also seized about 5 grams of methamphetamine. Velarde-Pavia was indicted on two charges: (1) unlawful possession with intent to distribute 50 grams or

3

more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and

(2) possession of a firearm in relation to drug trafficking, in violation of 18 U.S.C. §

924(c)(1).

In February 2019, before Velarde-Pavia's trial, the sheriff's office began

investigating Officer Juarez after receiving information that he may have recently

been using cocaine while employed as a police officer.[1] This eventually led the

sheriff's office to interview the CI in this case.

Over several interviews between February and April 2019, the CI told

investigators that the CI had started working for Officer Juarez sometime in "June,

April, May" of 2018 after getting "busted with an ounce [of drugs]." Supp. R. vol. 3

at 174, 233. The CI worked at Officer Juarez's direction. The CI helped Officer

Juarez, and his fellow officers working in tandem with him, by participating in

controlled buys of illegal drugs. Usually, the CI was paid between $60 to $100 for

each buy that led to an arrest. In total, the CI made about $1,000.

---

[1] In its order denying Velarde-Pavia's motion to suppress and to obtain a
*Franks* hearing, the district court found that Officer Juarez had "made an unprompted
statement that he had been using cocaine for six months." R. vol. 1 at 58. The district
court cites docket entry 109 for that information. According to the docket sheet,
docket entry 109 was a motion in limine about Officer Juarez. We have been unable
to locate that document in the record. But even assuming Officer Juarez started using
cocaine six months before the investigation, that would mean that Officer Juarez
began using in August 2018—at least two months after he signed the affidavit in this
case.

4

The CI acknowledged that in 2019, after working with Officer Juarez for "a while,"[2] Officer Juarez started sending the CI sexually inappropriate text messages. But the CI was never alone with Officer Juarez, and despite Officer Juarez's advances, in the CI's view, the relationship was purely professional.

After the prosecutors provided him copies of these interviews, Velarde-Pavia moved to compel the disclosure of the CI's identity. He sought the CI's identity to assess the CI's credibility and undermine the contents of the search-warrant affidavit. In a separate motion, Velarde-Pavia made two requests. First, he moved to suppress the methamphetamine and firearms, arguing that the warrant lacked sufficient information on its face to establish probable cause. Second, he sought a *Franks* hearing, arguing that the affidavit omitted material information that undermined the CI's reliability. The district court denied his motions.

The case proceeded to trial. After the government rested its case, Velarde-Pavia moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that insufficient evidence supported the charges. The district court denied his motion. A jury later convicted Velarde-Pavia on both counts.

---

[2] During one interview, the CI told investigators that Officer Juarez sent inappropriate text messages "during that time frame" of May or June 2018 to January 2019. R. vol. 2 at 128. But in another interview, two months later, the CI clarified that the messages didn't begin until "a while" after the CI had begun working with Officer Juarez. Supp. R. vol. 3 at 237.

**DISCUSSION**

Velarde-Pavia raises four issues on appeal. First, he argues that the district court should have suppressed the methamphetamine and firearms seized because the affidavit lacked sufficient information to establish probable cause. Second, he insists that he was entitled to a *Franks* hearing to contest Officer Juarez's credibility. Third, he argues the CI's identity should have been disclosed so that he could gather information by which to contest the CI's credibility. Fourth, Velarde-Pavia contends that insufficient evidence supported his conviction. We address each argument in turn.

**I.      Probable Cause for the Search Warrant**

Before issuing a search warrant, a magistrate must determine under the totality of circumstances whether the affiant has established probable cause of a crime justifying the search. *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009). Probable cause is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Id.* We review a district court's probable-cause determination de novo. *Id.* But our review of a magistrate's probable-cause ruling is more deferential. *Id.* As a reviewing court, we simply ask whether a magistrate judge had a "substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (cleaned up).

The affidavit here satisfies that standard. To start, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th

6

Cir. 2000). Less than 72 hours before the magistrate signed the search warrant, the CI "was able to purchase methamphetamine from Mr. Velarde-Pavia" during a controlled buy.[3] R. vol. 2 at 26; *see United States v. Aranda-Diaz*, 623 F. App'x 912, 916 (10th Cir. 2015) (finding that a controlled buy supplied "sufficient corroborating information" to support probable cause).

The affidavit also provided information to establish the veracity of the CI. For example, it stated that "on more than three separate occasions" the CI had participated in controlled buys with officers and provided information that "led to the recovery of controlled substance." R. vol. 2 at 25; *see United States v. Long*, 774 F.3d 653, 658–59 (10th Cir. 2014) (affirming a probable cause determination because, among other reasons, the CI had participated in controlled buys and provided information that led to the seizure of drugs). Taken together, the affidavit provided sufficient information for the magistrate to find probable cause.

Still, Velarde-Pavia argues the methamphetamine and firearms should have been suppressed because the affidavit was an obvious "cut and paste" job from another warrant. We acknowledge that the use of boilerplate language cannot replace the needed "particularized facts." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th

---

[3] Velarde-Pavia counters that the controlled buy cannot establish probable cause because "there was no indication in the affidavit that any officers actually observed the informant buying methamphetamine." Opening Br. at 25. But we foreclosed this argument in *United States v. Artez*, 389 F.3d 1106, 1112 (10th Cir. 2004), where we explained that "the absence of constant visual contact with the informant conducting the transaction does not render a controlled purchase insufficient."

Cir. 1996). But the use of some generic language does not invalidate a warrant so long as there is still sufficient information to support probable cause. *United States v. Romo*, 914 F.2d 889, 898 (7th Cir. 1990). And here, more specific language would only further affirm the CI's reliability. This is so because Officer Juarez paid the CI $60 to $100 for each controlled buy, and the CI made about $1,000. Thus, the CI must've participated in far more than just three controlled buys.

In sum, there was a "substantial basis" for finding probable cause, and the district court properly denied Velarde-Pavia's suppression motion.

## II.    *Franks* **Hearing**

We have yet to adopt a standard of review for the denial of a *Franks* hearing. *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011). But other circuits apply either clear error or de novo review. *Id.* We need not decide which standard applies now because, even under the stricter de novo standard, the district court did not err in denying Velarde-Pavia a *Franks* hearing.

Under *Franks*, a Fourth Amendment violation occurs when "(1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued." *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020) (cleaned up). So to obtain a *Franks* hearing, a defendant must make a substantial preliminary showing of both recklessness and materiality. *Id.* To make this showing, a defendant must provide affidavits from witnesses, or adequately explain why such affidavits are absent. *Artez*, 389 F.3d at 1116.

8

Velarde-Pavia has failed to satisfy his burden. The crux of his argument is that if the district court had held a *Franks* hearing, he "could have proved" that Officer Juarez lied in his affidavit. Opening Br. at 31–32. But "the information that could be gleaned from a *Franks* hearing cannot be the basis for granting a *Franks* hearing." *United States v. Smith*, 846 F. App'x 641, 648 (10th Cir. 2021).

In any event, Velarde-Pavia has offered no evidence that Officer Juarez lied in his affidavit. Rather than make the needed "substantial preliminary showing," Velarde-Pavia only speculates that Officer Juarez *could be* lying—that is not enough. For example, Velarde-Pavia points out that the CI told investigators that he or she had started working for Officer Juarez "in May or June of 2018." Opening Br. at 30. And because the warrant was issued on June 7, 2018,[4] it's possible, according to Velarde-Pavia, that the CI didn't start working for Officer Juarez until after the warrant had already been issued. There are two issues with this argument. First, if the CI started working with Officer Juarez in May or the beginning of June, Officer Juarez did not lie in the affidavit. And second, the mere possibility that the CI's statement could be interpreted in Velarde-Pavia's favor falls far short of a "substantial preliminary showing." Ultimately, Velarde-Pavia gives us no reason to doubt the affidavit's affirmations.

As another example, Velarde-Pavia also argues that Officer Juarez lied because the affidavit stated that the CI had "personally purchased controlled

---

[4] In another part of their interview, the CI stated that he or she started working with Officer Juarez in "June, April, May" of 2018.

substances for Agents with the Chavez County Metro Narcotics Task Force," even though the CI told investigators that he or she "only worked for Gerald Juarez and no one else." Opening Br. at 29–31. But those statements are not inconsistent. First, Officer Juarez is part of the Chavez County Metro Narcotics Task Force. Second, the CI's admission of having "only worked" for Officer Juarez can be understood as the CI reporting only to Officer Juarez during these controlled buys. The CI, however, is not asserting that she didn't interact with other police officers. Indeed, the CI acknowledges that other officers were always with Officer Juarez when they met.

To the extent that Velarde-Pavia argues that Officer Juarez's later drug use and sexually inappropriate text messages undermine his credibility, we do not alter our analysis. We agree with the district court that much of this conduct arose after he signed the affidavit for the search warrants.

And even if the affidavit would require this information, Velarde-Pavia bears the burden of demonstrating that its inclusion would have made the warrant defective. *Moses*, 965 F.3d at 1110. But as we explained above, given the controlled buy, probable cause supported the warrant.[5]

At bottom, Velarde-Pavia only speculates that Officer Juarez lied in his affidavit. The district court thus properly denied his request for a *Franks* hearing.

---

[5] Velarde-Pavia also argues that the affidavit left out information that undermined the CI's credibility, such as the CI receiving payment for participating in the controlled buys and the CI's previous drug use. But the controlled buy furnished the needed probable cause. *See United States v. Nelson*, 450 F.3d 1201, 1214 (10th Cir. 2006) (affirming a probable-cause determination based on a controlled buy).

### III.    Disclosure of CI's Identity Under *Rovario*

"We review for abuse of discretion a denial of a motion to compel discovery regarding a confidential informant." *Long*, 774 F.3d at 663.

Velarde-Pavia argues that the district court erred in denying his motion to compel the CI's identity under *Rovario v. United States*, 353 U.S. 53 (1957). In *Rovario*, the Supreme Court held that a CI's identity must be disclosed "whenever it would be relevant and helpful to an accused's defense or essential to a fair determination of a cause." *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990) (citing *Rovario*, 353 U.S. at 60–61). But we haven't required disclosure when "the informant is not a participant in or a witness to the crime charged" or when the defendant merely speculates "about the possible usefulness of an informant's testimony." *Id.*

Here, the district court denied Velarde-Pavia's motion to compel because the CI was neither a witness nor a participant to Velarde-Pavia's charged crime. We agree with that analysis. *See United States v. Holmes*, 311 F. App'x 156, 162 (10th Cir. 2009) (affirming denial of a motion to compel a CI's identity because the CI did not participate in the illegal transaction).

As an added point, Velarde-Pavia can only speculate about the possible relevancy of the CI's testimony. If he had the CI's identity, Velarde-Pavia argues, he

11

"could have proved" inconsistencies in Officer Juarez's affidavit.[6] Opening Br. at 16.

But "speculation about the possible usefulness of an informant's testimony" is

insufficient to obtain a CI's identity. *Moralez*, 908 F.2d at 567; *see also United States*

*v. Mendoza-Salgado*, 964 F.2d 993, 1001 (10th Cir. 1992) ("Where the value of the

informer's testimony remains speculative at best, we cannot say the district court

erred by denying disclosure of the informer's identity.").

So the district court did not err in denying Velarde-Pavia's motion to compel.

## IV.    Sufficiency of the Evidence for Velarde-Pavia's Conviction

We review de novo a motion based on sufficiency of the evidence. *United*

*States v. Smith*, 641 F.3d 1200, 1204 (10th Cir. 2011). We ask whether any rational

trier of fact could have found the defendant guilty beyond a reasonable doubt and

view the evidence in favor of the verdict. *Id.* We do not reweigh the evidence or

determine the credibility of witnesses. *Id.*

Velarde-Pavia contends that insufficient evidence supported his intent-to-

distribute-methamphetamine conviction because officers found "[n]o scales, baggies,

client, list, etc." Opening Br. at 34. But given the expert testimony explaining that

drug dealers do not always have these items, the amount of methamphetamine found

on him and in his truck, and where the drugs were hidden inside the truck, the

evidence more than sufficed to support his conviction. Velarde-Pavia contests his

---

[6] Velarde-Pavia reiterates the same "inconsistencies" here as he did in arguing for a *Franks* hearing. As we explained above, many of those alleged inconsistencies are not inconsistencies at all.

§ 924(c)(1) conviction based on his claim that insufficient evidence supported his methamphetamine-distribution conviction. Because we conclude sufficient evidence supports his drug-trafficking conviction, it follows that sufficient evidence supports his § 924(c)(1) conviction too.

Thus, the district court properly denied his motion for judgment of acquittal.

## CONCLUSION

We affirm the denial of Velarde-Pavia's motions.

Entered for the Court

Gregory A. Phillips
Circuit Judge